THE STATE v. LUCAS.

1. **Criminal Law**: SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION. Evidence considered and held sufficient to justify the jury in finding that the defendant was present and accessory to the robbery.

2. ———: EVIDENCE: PARTY NOT BOUND BY. The State, by introducing proof of certain testimony given by the defendant upon a former trial, is not bound thereby to admit that such testimony was true.

3. ———: ———: ACCESSORY. It is not necessary that the evidence of an unlawful combination to commit a crime, should be direct and positive. The defendant's connection with the transaction being shown, it is for the jury to determine from all the circumstances, whether he was there as an honest dupe or as a criminal accessory.

4. ———: ———: SENTENCE NOT EXCESSIVE. In view of the aggravated circumstances of this case, the sentence, imposing but little more than half the maximum punishment allowed by law, was not excessive.

*Appeal from Allamakee District Court.*

SATURDAY, DECEMBER 17.

THE defendant was indicted jointly with Charles Wood and James White for a robbery from the person of R. G. Edwards,

perpetrated by assaulting and wounding him with deadly weapons. The defendant was tried, convicted, and sentenced to the penitentiary. He appeals. The case was before us on a former appeal. See 55 Iowa, 321.

*L. Bullis*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

DAY, J.—I. It is insisted that the evidence is not sufficient to support the verdict. R. G. Edwards, in substance, testified that he was watchman for Hemmingway, Barclay & Co., who were running a steam saw mill, and had a safe in a little brick office not far from the mill. That about three o'clock on the morning of August 4, 1879, whilst he was out examining the logs and looking to see that all was right, two men, one armed with a club and the other with a revolver, assaulted him; that the one armed with a revolver, whom he supposed to be Lucas, the defendant, held the revolver to his face and ordered him to lie down, whilst the other, whom he identified as Wood, and who is referred to in the evidence as the Kid, hit him with a club about three feet long; that he reeled, and when he came to, Wood was on his breast and there was a noose around his feet, and the other man was standing back of him; that they said they didn't want to hurt him if he would only submit; that they were going for the safe; that one of them said to the other, "now let's go for the safe," and that, whilst the other man went for a sledge, Wood rifled his pockets, and took three dollars, all the money he had. The witness further testified that the man who went for a sledge came back and stood over him. "And he asked me if I had any money, and he asked if the Kid had taken it all, and I said he had, and he asked if three dollars was all, and I told him yes." The witness testifies that he can't positively identify the man who presented the revolver, though he is satisfied in his own mind

1. CRIMINAL LAW : sufficiency of evidence to sustain conviction.

who it was.   The witness had a lantern, the light of which he threw upon the men, but they had handkerchiefs tied around their faces.   He testifies to certain appearances of the eyebrows and a peculiar shrugging of the shoulders, by which he thinks he recognizes the defendant.   Upon the other hand, the witnesses for the defendant testify that the defendant has no peculiar habit of shrugging the shoulders.   The whole testimony of the witness amounts simply to this, that the witness is satisfied in his own mind that defendant is one of the parties who assaulted him, although he cannot state positively that such is the fact.   Positive certainty is scarcely ever attainable except as to mathematical truths.   There is no rule of law which requires that a witness shall be positively certain of a fact.   The liability to error and mistake is so great in all human operations, that a suspicion generally arises as to the honesty of a witness who will not admit the possibility of his being mistaken.   We do not feel warranted in holding that the evidence was not sufficient to justify the jury in finding that the defendant was present at the transaction referred to by the witness.

II.   It is claimed, however, that conceding the defendant to have been present at the time referred to by the witness, still the evidence does not connect the defendant with the robbery in question, but shows that it was perpetrated by Wood whilst the defendant was after the sledge, and that the only offense contemplated by the defendant was the robbery of the safe. From the fact, however, that the defendant returned and asked the witness if he had any money, and if the Kid had taken it all, and if three dollars was all, the jury might well find that the purpose of the defendant and Wood was not limited to the mere robbery of the safe, but that it included as well the obtaining of any money which the witness might have upon his person.   We think that, under the doctrine announced by the court in its instructions, and under the doctrine announced by this court upon the former appeal, the

jury might well find that the defendant, if present at the time referred to, was accessory to the robbery of Edwards. The verdict is not opposed to the instructions, taking them all together and considering them, as must be done, as limit- . ing and qualifying each other.

III.   The State introduced proof of certain testimony which the defendant gave upon the former trial.  Respecting this the defendant   asked   the   following   instructions: "When the State proves the admission of defend- ant, as evidence in its favor, it thereby introduces the same as credible and truthful, and the plaintiff in so intro- ducing it is bound by it as truthful."

*2. ——: evidence: party not bound by.*

The refusal to give this instruction is assigned as error. This instruction was properly refused.  The testimony of a defendant, upon a former trial, may be of so unreasonable and contradictory a character as to furnish evidence of its own un- truthfulness.   The State, by proving that the defendant gave such testimony, is not bound to admit that it is true.

IV.   The defendant assigns as error the giving of the fol- lowing instructions:

"If you are satisfied beyond a reasonable doubt, after considering and comparing all the evidence in the case, that Lucas and his associates went to Lansing with the common purpose and design to commit any crime that the circumstances might give them an opportunity to commit, and that the intention of Lucas was to aid and abet his associates in anything they might do in the consumma- tion of such design, either by rowing them to Lansing, or waiting in the boat there for them while they went ashore, or in aiding them afterwards to escape, if for the purpose of evading justice, whether done for a general compensation of $25 or other sum, or with intent to share in the proceeds of any robbery his associates might commit, whether he left the boat or not, he is equally guilty with his associates of any robbery they, or either of them, committed."

*3. ——: ——: accessory.*

This instruction is in harmony with the law as announced by this court on the former appeal. It is claimed, however, that there is no evidence that the defendant and his associates combined for any purpose or for any crime. It is not necessary that the evidence of an unlawful combination to commit a crime, should be direct and positive. It may be extracted from the circumstances connected with the transation. See *Miller v. Dayton, ante,* p. 428, and authorities there cited.

It was proved that the defendant testified upon the former trial that he was hired by the Kid and James White to row them down to Dubuque for $25. That they had staid at New Albin the night before they came to Lansing, and that they came to Lansing about 12 o'clock or a little before, and that the boys went up town after something, and that during this time he was asleep while the boys were up town, and that the boys came in a great hurry in the morning and ordered him to row across the river, and White put himself in the bottom of the boat, and that he pulled them across to the Wisconsin shore and sunk the boat and went across the country to La Crosse.

It was further shown that he testified that the two men divided money in the boat, and that the satchel, containing burglar's tools, which was produced in court, looked like the satchel which they carried. The connection of the defendant with Wood and White was thus shown by his own admissions. Whether he was with them as an honest dupe, or as a criminal accessory, was for the jury to determine from all the circumstances of the case.

V. It is claimed that the sentence is excessive. Upon the former conviction the defendant was sentenced to twelve years imprisonment. He had served seven months and one day when he was released by a reversal of the case. Upon his second conviction he was sentenced to twelve years imprisonment, less seven months and one day. The maximum punishment for the offense charged in the indictment is imprisonment for twenty years. Although the amount taken is

4. ——: ——: sentence not excessive.

small, the circumstances are aggravated. In imposing but little more than half the maximum punishment authorized, we cannot say the court erred.

AFFIRMED.