16232

STATE v. HOOPER
(54 S. E. (2d) 517)

*Mr. John B. Baltzegar, Jr.,* of Orangeburg, *for Appellant,*

*Mr. Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondent,*

June 21, 1949.

OXNER, Justice.

Appellant was convicted of robbery while armed with a deadly weapon (Section 1140-1 of the 1942 Code), and sen-

tenced to imprisonment for a term of seven years. The fact that a robbery was committed seems to be conceded. Appellant's major contention is that the evidence is insufficient to connect him with the crime.

The robbery occurred in the presence of eight or ten people at a bus station, in the City of Orangeburg, on Sunday morning, November 28, 1948. The bus station was opened that morning at 8:15. Within a few minutes two men drove up in a car and entered the waiting room. One of them held a shotgun on the lady in charge of the station while the other, claimed by the State to be appellant, took the money from the cash drawer. Both men wore top coats and dark felt hats pulled down close to their eyes, but their faces could be seen. The manager testified that the man who removed the money from the cash drawer had "droopy shoulders", "was not very tall", and "had dark hair and small feet." She said that appellant had the "same shoulders, same dark hair", but she was not exactly sure as to his identity. The only other person present who worked in the bus station was the lady who operated the lunch counter. She testified as follows on the question of identity: "Q. State whether or not the defendant Hubert Hooper is the man you saw who took the money from the counter, that one of the men you have described? A. Looks just like one I saw that morning."

Several other ladies who were in the bus station testified but were unable to positively identify appellant as one of the robbers. The only man present was forced to give up his pocketbook at the point of a gun. He seemed to remain more cool and collected than the others. On the question of identity, his testimony was as follows: "Q. The man who has been designated here by the testimony in this case as Hubert Hooper, who is now in this court room, is that the man you saw in the bus station on the morning of November 28? A. Best of my knowledge, he is."

According to the testimony of the manager of the bus terminal, both men left the station at 8:24, or nine minutes after the station was opened.

The State also offered testimony tending to show that appellant was seen in the City of Orangeburg on Saturday afternoon and night preceding the robbery the next morning and also on the night after the robbery. Appellant did not take the stand. The testimony for the defense tended to establish an abili to the ffect that appellant was in Charlotte, North Carolina, when the robbery occurred.

In refusing a motion for a new trial, the presiding Judge said: "In this case the witnesses who had the opportunity to identify the defendant impressed me very much not only as people of character but who fully realized the solemnity of an oath and the consequences of their testimony. They were cautious and careful, more so than in any case I have ever heard." He also stated that the witnesses offered by appellant to establish an alibi "made no impression whatever on me."

We may digress for a moment to say that the record does not disclose whether the other person involved in this robbery was ever apprehended or, if so, what disposition was made of his case.

We cannot say as a matter of law that the testimony was insufficient on the question of identity. It is true that none of those present swore positively and unequivocally that appellant was one of the men involved in this robbery. But we do not understand that the law exacts such absolute certainty of observation. None of those in the bus station had ever seen these men before and their opportunity for observation was brief. About all that could be expected was an expression of opinion or belief. Of course, there is a possibility of mistake but the evidence was sufficient to warrant submission of the question to the jury. *State v. McNeal*, 103 S. C. 197, 87 S. E. 1004; *State v. Riddle*, 324 Mo. 96, 23 S. W. (2d) 179; *Asher v. Commonwealth*, 221 Ky. 599,

299 S. W. 203; *State v. Lucas,* 57 Iowa 501, 10 N. W. 868. In speaking of this class of testimony, the Court in *State v. McNeal, supra* [103 S. C. 197, 87 S. E. 1005], said: "The real question is: Can a witness say, 'I saw a man at a certain time and place, and I believe the defendant is the man I saw,' or must the witness say, 'I saw the man, and I know the defendant is the man'? The question carries its own answer. There are some people who know everything. There are others, who, conscious of human limitations, speak with caution." In *State v. Riddle, supra* [324 Mo. 96, 23 S. W. (2d) 182], the Court said: "The statement, 'to the best of my knowledge,' meant that it was possible that he was mistaken, but that his knowledge, as well as his belief, based on his knowledge, was that defendant had robbed him."

The contention is also made that there is no proof that appellant was armed, but the evidence abundantly shows a common purpose to rob and that the two men were acting in concert, with each performing his part in this felonious enterprise.

After the verdict of guilty was returned, appellant made a motion in arrest of judgment upon the ground that the offenses of robbery and grand larceny were improperly joined in the same count of the indictment. It is claimed that the Court erred in refusing the motion. Assuming, without deciding, that the indictment was defective in this respect, such defect was apparent on the face thereof. There was no motion to have the offenses separately stated. Appellant did not demur or move to quash. The question was raised for the first time on the motion for arrest of judgment. The objection came too late. Section 1004 of the 1942 Code. Equally untenable is appellant's contention that the verdict of the jury was too general and did not indicate whether defendant was found guilty of robbery or larceny. The only offense submitted to the jury was that of robbery while armed with a deadly weapon. The jury was instructed to return a verdict of guilty on this charge or a verdict of not guilty.

The next exception relates to the exclusion of evidence. Appellant's brother testified that during November, 1948, both of them lived in Charlotte, North Carolina, and worked at the Rock Hill plant of the Celanese Corporation. (It is not contended that appellant worked on the day of the robbery). During the direct examination of the appellant's brother, the following occurred:

"Q. When was the last day that he (appellant) worked for them (Celanese Corporation)? A. On Monday, I don't recall the date.

"Mr. Baltzegar:

"Your Honor, I have a letter from the Celanese plant.

"The Court: Show it to the Solicitor.

"Solicitor Wolfe: I could not admit this,

"Objection sustained.

"Mr. Baltzegar to the witness:

"Q. Did you work on Thanksgiving day? A. No, sir."

We do not know the contents of the letter above mentioned or to whom it was addressed. It was not included in the record. Apparently it contained a statement made by someone connected with the Celanese Corporation. The Court was clearly correct in refusing to admit it.

It is contended that the Court erred in refusing the following request: "You must weigh very carefully the testimony as to the identification of the accused, in that the status of the accused is susceptible to this suggestion, together with the occasional further complication of defective perception." The request involved a charge on the facts and was properly refused.

Appellant complains that the conduct of the trial Judge was calculated to coerce the jury. After deliberating for a while (the record fails to disclose how long), the jury returned to the court room and the following occurred:

"The Court:

"Mr. Foreman and Gentlemen of the jury, have you been able to reach a verdict?

"The Foreman: Your Honor, it looks almost impossible to get a verdict.

"The Court: Does your question involve a question of fact or law?

"The Foreman: Question of fact."

The Court thereupon sought to impress upon the jury the importance of making every effort to reach a verdict, stating, however, that he did not want any "member of the jury to surrender any conscientious opinion that he may have with regard to the facts."

Subsequently (the record does not disclose what length of time), the jury returned to the court room and the following took place:

"The Court:

"Mr. Foreman and Gentlemen of the Jury, have you agreed on a verdict?

"Mr. Foreman: No, sir, your Honor. Would you explain to us the phrase 'to the best of my knowledge'.

"The Court:

"You are talking about the testimony and I can't discuss the testimony with you at all, can't discuss that at all."

The jury again retired and thereafter reached a verdict. (Again the record does not disclose the length of time the jury deliberated before reaching a verdict).

We find no basis for the claim that the foregoing action amounted to coercion. There was nothing unusual in sending the jury back for further deliberations after the foreman stated that they had been unable to reach a verdict. When the jury returned the second time, there was no indication of an unwillingness to retire again for further deliberations or any expression of a desire to be discharged. The record fails to show that the jury was kept together an unreasonable length of time.

Finally, it is said that the Court erred in failing to define the phrase, "to the best of my knowledge", after being requested to do so by the jury. The Court could not have granted this request without charging on the facts.

Judgment affirmed.

BAKER, C. J., and FISHBURNE and STUKES, JJ., concur.

TAYLOR, J., dissents.

TAYLOR, Justice (dissenting).

I regret very much that I am unable to agree with the majority opinion in this case. Testimony was adduced to the effect that appellant had visited his former home in Orangeburg County and had been seen in the City of Orangeburg on the afternoon and night preceding the robbery at the Bus Station, but there is no testimony placing appellant at the scene of the crime, unless the statements referred to in the opinion by Justice Oxner are to be so considered. One eye witness testified that appellant "has the same shoulders, same dark hair" as the person who removed the money from the cash drawer. Another that he "looks just like one I saw that morning". Another that he was the person who participated in the robbery "to the best of my knowledge", but all witnesses refused to positively identify appellant as one of the two persons who robbed the Bus Station and its occupants on this occasion. The testimony of these witnesses who state the facts from their observation according to their best recollection or best belief as to what they saw is admissible, but with qualifications. A witness who is uncertain as to either observation or recollection of a fact concerning which he is asked to testify may qualify such testimony by the use of phrases which express less than a positive degree of assurance. 20 Amer. Jur. Sections 768, 1178. This, however, does not relieve the state of the burden of proving one, charged with the commission of a crime, guilty beyond a reasonable doubt before a conviction can be sustained. The verdict of the jury must, of course, be supported by the law and the evidence of the case.

A witness may testify "to the best of his knowledge" and be testifying truthfully when in fact that knowledge might be very limited.

In this case, there is no other evidence to bolster the testimony above referred to as to identity. All witnesses refusing to unqualifiedly identify the appellant.

Some of the most tragic miscarriages of justice have been due to error in identification. It is better that many guilty should escape than that one innocent should suffer. See *Wigmore on Evidence,* 163 Sec. 746; *State v. Manis,* 214 S. C. 99, 51 S. E. (2d), 370.

Considering the law applicable to circumstantial evidence in criminal matters this court said in *State v. Kimbrell,* 191 S. C. 238, 4 S. E. (2d) 121, 122:

"Where it is undertaken by the prosecution in a criminal case to prove the guilt of the accused by circumstantial evidence, not only must the circumstances be proven, but they must point conclusively—that is, to a moral certainty—to the guilt of the accused; they must be wholly and in every particular perfectly consistent with each other, and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused."

I am of the opinion that the testimony adduced in this case does not meet the requirements stated above and am of the opinion that it was error for the trial court to refuse defendant's motion for a directed verdict of not guilty and that this case should be remanded to the court of General Sessions of Orangeburg County for this purpose.