Pearce **JOHNSON** et al., Plaintiffs-Appellees,

v.

Rogers C. B. **MORTON**, United States Secretary of the Interior, et al., Defendants-Appellants.

No. 71-1375.

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1972.

Rehearing and Rehearing En Banc Denied March 13, 1972.

---

Crawford C. Martin, Atty. Gen. of Tex., W. O. Shultz, Asst. Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Harold G. Kennedy, Asst. Atty. Gen., Austin, Tex., for Parks and Wildlife Dept. Group.

Robert C. Eckhardt, Washington, D. C., for intervenors.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Shiro Kashiwa, Asst. Atty. Gen., Edmund B. Clark, Carl Strass, Attys., Dept. of Justice, Washington, D. C., for the Secretary of the Interior.

J. Chrys Dougherty, H. Lee Godfrey, Austin, Tex., for Mrs. Sam Wilson, Jr.; Graves, Dougherty, Gee, Hearon, Moody & Garwood, Austin, Tex., of counsel.

Pearce Johnson, Austin, Tex., W. Robert Brown, Glen E. Clover, Houston, Tex., for plaintiffs-appellees; Liddell, Sapp, Zivley & Brown, Houston, Tex., of counsel.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This is an appeal from an order setting aside approval of the expenditure of federal funds under the Land and Water Conservation Fund Act, 16 U.S.C.A. §§ 460*l*–1 et seq. and particularly § 460*l*–8, for the purpose of acquiring and developing lands on Mustang Island, Texas an outdoor recreational park. The order appealed from also enjoined the appropriate state and federal officials from

taking any further action toward the purchase of the Mustang Island property pursuant to the application for federal funds which is the subject of this litigation.

One of several issues raised on this appeal is whether the district court erred in failing to dismiss this action for lack of standing. The suit below was brought as a class action by Pearce Johnson, Ben Atwell, Don Kennard, and Peyton Walters in their individual and official capacities and as representatives of all Texas citizens for orderly development of Texas park and recreational facilities. Appellee Johnson sued in four capacities: As a member of the class described above, as a concerned individual, as the Chairman of the Texas Parks and Wildlife Commission, and as the duly appointed State Liaison Officer. The other three plaintiffs, all elected Texas officials or legislators, sued as representatives of the class described above and as concerned individuals.[1]

By way of a preface and as we shall see, the authority to purchase land for recreation purposes in Texas is vested in the Texas Parks and Wildlife Commission. There are three members of this Commission. Plaintiff Johnson is one; defendants Gilvin and Jersig are the others. Plaintiff Johnson was outvoted two to one with respect to the purchase of the Mustang Island property. The instant litigation flows entirely from this vote. Plaintiffs would reverse the vote through a flanking action in the federal courts to prevent the use of federal funds to match the state funds which are to be used in the purchase.

One of the issues presented to the district court was the contention that plaintiffs lacked standing to sue. This contention was rejected; the court holding that each of the plaintiffs had standing to sue in his individual and official capacities. We disagree with this determination of the standing issue and therefore reverse.

■ The issue of standing presents a threshold question to be decided by reference to the allegations contained in the pleadings of the parties plaintiff. Flast v. Cohen, 1968, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947; Baker v. Carr, 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663.[2] As the court stated in Flast v. Cohen, supra 392 U.S. at 101, 88 S.Ct. at 1953, 20 L.Ed.2d at 962, the concept of standing is derived from the Constitutional limitation of federal court jurisdiction to cases or controversies:

> "Thus, in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."

See discussion in Troutman v. Shriver, 5 Cir., 1969, 417 F.2d 171, 173, cert. den. sub nom. Troutman v. Rumsfeld, 397 U.S. 923, 90 S.Ct. 915, 25 L.Ed.2d 103, rehearing den., 397 U.S. 1018, 90 S.Ct. 1231, 25 L.Ed.2d 433.

■ Recognizing this limitation placed upon federal court jurisdiction by Article III of the Constitution, the Supreme Court, in Association of Data Processing Service Organizations v. Camp, 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, formulated a dual test for standing. The first question to be determined is whether the plaintiffs allege " . . . that the challenged action has caused [them] injury in fact, economic or otherwise." 397 U.S. at 152, 90 S.Ct. at 829. The second inquiry is whether the interest sought to be protected is " . . . arguably within the zone of interests to be protected or

---

1. The district court sustained a motion to strike all references in the complaint to a class action and permitted the suit to go forward in the names of plaintiffs as individuals.

2. Here the ruling on standing was made after the case was heard on the merits. The record, however, does not disclose any variance between the allegations contained in the pleadings and the evidence adduced upon the hearing.

regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830. See also Barlow v. Collins, 1970, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192. Having these principles in mind, we turn now to the allegations of the plaintiffs.

Essentially, plaintiffs rest on federal question jurisdiction, 28 U.S.C.A., § 1331, in terms of the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706, in that they claim to be persons aggrieved by agency action within the meaning of the Federal Land and Water Conservation Fund Act, supra. This latter Act establishes a method for financing the acquisition and development of outdoor recreation resources through a matching fund grant-in-aid program available to states upon application. 16 U.S.C.A. § 460*l*–8. The stated purposes of the Act are to insure to all citizens of the United States ". . . such quality and quantity of outdoor recreation resources as may be available and are necessary and desirable for individual active participation in such recreation and to strengthen the health and vitality of the citizens of the United States. . . ."

Prior to consideration of any application for matching funds, a state must submit to the Secretary of Interior a Statewide Comprehensive Outdoor Recreation Plan (SCORP) for his approval. The plan must contain the name of the state agency authorized to act for the state in dealing with the Secretary for purposes of the Act, an evaluation of the state's supply and demand for outdoor recreation resources, a program for implementation of the plan, and other necessary information as required by the Secretary. 16 U.S.C.A. § 460*l*–8(d). The Secretary may then provide financial assistance to any state for the acquisition and development of land and water resources if the projects concerned are in accordance with the Statewide Comprehensive Outdoor Recreation Plan. 16 U.S.C.A. § 460*l*–8(e).

To facilitate the implementation of the foregoing legislative provisions, the authority of the Secretary under the Act has been delegated to the Bureau of Outdoor Recreation. This bureau in turn has promulgated various regulations and procedures for the implementation of the federal grants-in-aid program. These regulations are set out in the Outdoor Recreation Grants-in-Aid Manual (BOR Manual) published by the Department of Interior.

The BOR Manual provides, *inter alia*, that for a state to be eligible for funds, the governor of each state must designate a State Liaison Officer (SLO) authorized to deal with the Director of the Bureau of Outdoor Recreation. BOR Manual, § 600.3.6. The BOR Manual further provides that all project proposals must be reviewed and recommended to the Bureau by the SLO, BOR Manual, § 640.1.1, and that prior to approval, the application may be withdrawn at the written request of the SLO. BOR Manual, § 660.2.3.

Plaintiffs below contended that the approval of federal grants-in-aid funds for the acquisition and development of lands on Mustang Island failed to conform to the foregoing procedures required by the statute and the BOR Manual. Specifically, they urge that the purchase was not authorized by the Texas Comprehensive Plan (SCORP); that the State Liaison Officer did not approve the purchase and sought to withdraw the application for federal funds. In addition, they point to certain alleged in-office or internal procedural irregularities in the handling of the matter by the Secretary.

Mustang Island is a barrier island off the Gulf Coast of Texas approximately six miles east of the city of Corpus Christi. The Texas SCORP, theretofore approved by the Secretary, contained priorities for the acquisition of lands for recreational purposes and contained a study of the recreational needs of the Texas Gulf Coast. The SCORP contained no priority for the acquisition and development of lands in the Corpus Christi area, including Mustang Island.

On November 10, 1971, the purchase of Appellant Wilson's Mustang Island property was considered by the Texas Parks and Wildlife Commission as required by state law. Vernon's Ann.St. Texas Const. art. 3, § 49–e, Vernon's Ann.Tex.Civ.Stat. art. 6070h, § 9. Two members of the commission (appellants Gilvin and Jersig) voted in favor of the purchase; Pearce Johnson, Chairman of the commission, voted against it. Following this vote, an application for matching federal funds was prepared by defendant Singleton, Executive Director of the Texas Parks and Wildlife Department, and was submitted to Johnson as the duly appointed State Liaison Officer.[3]

Johnson refused to sign the request based upon his determination that the Mustang Island project was not in accordance with the Texas SCORP. The application, nevertheless, was forwarded to the Department of Interior without the approval of Johnson. Thus plaintiffs alleged that although Johnson was the duly appointed SLO charged with responsibility for initiating requests for funds, he did not request the funds involved here, and in fact attempted to have the application withdrawn as provided by the BOR Manual, § 660.2.3.[4] Johnson was joined in his efforts by the Governor of Texas who communicated his views to the Department of the Interior.

The net effect of these allegations is to indicate that the approval and issuance of federal funds for the acquisition and development of Mustang Island may arguably have been in violation of the Federal Land and Water Conservation Fund Act and the Secretary of Interior's own regulations as contained in the BOR Manual.

As concerned citizens for orderly development of recreational resources and as public officials charged with a public trust, the plaintiffs below contend that they are within the zone of interests protected by the Act. See Association Data Processing Service Organizations v. Camp, supra. Assuming arguendo that this is the case, it is sufficient to state that allegations showing an interest protected by a relevant statute provide only one of the two steps necessary to establishing a party's standing. An injury in fact, arising out of the action complained of, must also appear. See Association of Data Processing Service Organizations v. Camp, supra; Barlow v. Collins, supra. The zone of interests step is of much importance, however, in deciding if there has been an injury in fact in that the zone of interests facilitates the identification of the interest which is alleged to have been injured in fact. Here the zone of interests created by the Act is making recreational resources available to citizens generally. The particular interest allegedly injured must be within the statutory zone of interests.

Thus, we arrive at the determinative question on this appeal—whether the allegations of the plaintiffs were sufficient to show an injury in fact to an interest protected by the Federal Land and Water Conservation Fund Act.

■ At the outset, we note that there would be no difficulty in finding standing for plaintiffs who could properly al-

---

3. The defendants, in addition to the Secretary and Mrs. Wilson, the landowner, are Messrs. Gilvin, Jersig, Singleton, other officers in the Parks Department, as well as the Treasurer and Comptroller of Texas. All state officer defendants are represented here by the Attorney General of Texas. Plaintiff Johnson, also a state officer, is represented by private counsel.

4. On the merits, there is a sharp question as to whether the State Liaison Officer had any real power in the premises in view of the supervening Texas Statute, Vernon's Ann.Tex.Civ.Stat. Art. 6081r, which constituted the Texas Parks and Wildlife Commission as the state agency to cooperate with the federal government with respect to all federal assistance programs having to do with the acquisition and development of outdoor recreation resources, and specifically under the Federal Land and Water Conservation Fund Act here in issue.

lege that the federal expenditure would aid a project which would directly affect aesthetic or environmental interests in which they have a special interest by altering or destroying limited resources. See as examples: Environmental Defense Fund, Inc. v. Hardin, 1970, 138 U.S.App.D.C. 391, 428 F.2d 1093; Nashville I–40 Steering Committee v. Ellington, 6 Cir., 1967, 387 F.2d 179; Scenic Hudson Preservation Cnf. v. FPC, 2 Cir., 1965, 354 F.2d 608. These decisions employ the aggrieved persons concept within the meaning of relevant statutes creating zones of interest with review under the Administrative Procedure Act, 5 U.S.C.A., § 702, as taught in *Data Processing*, supra. *Scenic Hudson*, supra, involved the Federal Power Act, 16 U.S.C.A., § 803(a). Environmental Defense Fund, Inc. v. Hardin, supra, involved the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C.A., §§ 135–135k and the Food, Drug, and Cosmetic Act, 21 U.S.C.A., §§ 301–392. *Nashville I–40*, supra, involved the Federal-Aid Highway Act, 23 U.S.C.A., § 101 et seq. Sierra Club v. Hickel, 9 Cir., 1970, 433 F.2d 24, cert. granted, sub nom. Sierra Club v. Morton, 1971, 401 U.S. 907, 91 S.Ct. 870, 27 L.Ed.2d 805, involving the National Forest Act, 16 U.S.C.A., § 497, is a case of this type although the Ninth Circuit concluded that there was no injury in fact without first considering whether a zone of interest existed under a relevant statute. See also Davis, The Liberalized Law of Standing, 37 U.Chi.L.Rev. 450 (1970).

Here, as stated previously, the proceeding is brought under the Federal Land and Water Conservation Fund Act, 16 U.S.C.A., §§ 460*l*–4 through 460*l*–8 and the Administrative Procedure Act, 5 U.S.C.A., § 702. The injury is not direct. It is attenuated at best and does not amount to an injury in fact. The injury alleged is that the acquisition and development of Mustang Island will so deplete state funds available for outdoor resources that it will jeopardize the orderly development of parks in other areas of the state for several years.

Plaintiffs are interested in other areas, not in Mustang Island. One particular concern to them is that if state funds are used for the purchase of the Mustang Island property, a proposed project for Lake Livingston, Texas will be foreclosed for lack of funds. Thus they argue that the action by the Secretary of Interior and the other appellants has caused an injury in fact to their interest in the orderly development of Texas recreational resources. Stated differently, they object to the reordering of priorities established by the state for acquiring recreational areas.

At best, the injury complained of amounts to a frustration of their interest in the allocation of state funds for recreational purposes. However, this frustration stems not from the action of the Secretary, despite its alleged illegality, but from the decision of the Texas Parks and Wildlife Commission to devote all available state funds to the acquisition and development of Mustang Island to the exclusion of other areas. This decision is a matter of state policy to which the Secretary of the Interior is not privy. Priorities are a state matter and the action of the Secretary in funding state selected projects on a matching basis is ancillary in scope. We do not perceive that the State Parks and Wildlife Commission could not alter the priorities contained in the present SCORP.

Plaintiffs assert that without the federal funds approved by the Secretary, the purchase of Mustang Island property might not be possible. This argument is insufficient to show injury in fact at the hands of the Secretary. His action, while indirectly related to the claimed injury, does not suffice to establish a federal nexus to the injury. The change in priorities by the state agency is at bottom all that can be said to have a causal connection to the alleged injury. Thus we conclude that the allegations fail to establish injury in fact to plaintiffs in either their individual or official capacities as a result of the action of the Secretary.

The sole federal nexus alleged lies with the action of the Secretary. Since we fail to find a sufficiently direct relationship between the Secretary's approval of the Mustang Island project for grants-in-aid funds and the alleged injury suffered by plaintiffs in either their official or private capacities, we hold that the district court erred in failing to dismiss this action for lack of standing. In the end, plaintiffs' complaint is for a Texas and not a federal forum.

Reversed and rendered.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.