**A. J. KORIOTH, Plaintiff-Appellant,**

v.

**Honorable Dolph BRISCOE et al., Defendants-Appellees,**

v.

**CITY OF FARMERS BRANCH, Movant-Appellant.**

No. 75–2058
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 24, 1975.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York*, 5 Cir. 1970, 431 F.2d 409, Part I.

Doug McCallon, City Atty., Farmers Branch, Tex., for City of Farmers Branch.

M. Wayne Tinkler, Austin, Tex., for A. J. Korioth.

Frank C. Cooksey, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

A. J. Korioth is a United States citizen from Texas, a taxpayer, and a state legislator. He brought this action to challenge, as violative of the Federal and Texas constitutions, the establishment of regional planning agencies under a Texas statutory scheme. The City of Farmers Branch (the City) is a municipality which has participated in one of the regional planning agencies established under that scheme. The City sought to intervene as an additional plaintiff in Korioth's suit. The district court dismissed the action of Korioth for lack of standing and denied the City's motion to intervene. We agree that Korioth "al-

# 1274

leged no injuries sufficient to give rise to a 'case or controversy'," and we find no clear abuse of discretion in the denial of the City's motion to intervene. We affirm the order.

## I. STANDING

Plaintiff-appellant Korioth alleged in his complaint to the district court that Tex.Rev.Civ.Stat.Ann. art. 1011m (Supp. 1974), in providing a means for formal cooperation between certain state regional planning agencies and the Republic of Mexico,[1] contravened the United States Constitution's proscription against states entering into treaties with foreign governments.[2] Korioth also alleged that the scheme violated the Texas constitution's implicit mandate that sub-units of government may embrace no more than one county.[3] In his later filed "Memorandum of Authorities in Opposition to

Defendant's Motion to Dismiss," Korioth added the claim that federal monies funding the regional agencies were being illegally spent, since the federal program only authorized payments to agencies empowered under state or local law to perform such planning.[4] In this appeal from the district court's dismissal for lack of standing, Korioth argues that he has standing to litigate based on each of his statuses as a citizen, as a taxpayer, and as a legislator.

### A. Citizen Korioth

The requirement that an individual have standing to litigate in federal courts is in part a derivative of the Constitution's limitation of the federal judicial power to "cases" and "controversies," U.S.Const. art. III, § 2, and in part the result of long favored prudential considerations.[5] Federal courts are not

1. Section 8 of art. 1011m provides:
    With advance approval of the governor, a Commission in a region or area contiguous to areas in the Republic of Mexico may expend the funds available under the provisions of Section 6 of this Act in cooperation with agencies of the Republic of Mexico or its constituent states ·or local governments for planning studies encompassing areas lying both in this state and in contiguous territory of the Republic of Mexico.

2. The Constitution provides that "no state shall enter into any Treaty, Alliance or Confederation," art. I, § 10, cl. 1, and that the President "shall have power by and with the Advise and Consent of the Senate, to make Treaties provided two-thirds of the Senators present concur," art. II, § 2, cl. 2. Korioth argues that art. 1011m, § 8, in purporting to bestow treaty-making power on the governor, is facially inconsistent with these provisions of the federal Constitution. The state has noted in response that no agreements with Mexico have as yet been entered into under the statute. Our disposition of the case on lack of standing pretermits any consideration of these constitutional conundrums.

3. Art. 1011m, § 1(D) provides that a "region," for regional planning commission purposes, means a "geographic area consisting of a county or two or more adjoining counties . . ." Art. 1011m, § 4 empowers the regional planning commissions to perform certain arguably governmental functions. Plaintiff-appellant asserts that these provisions contravene Section 64 of Article III of the Consti-

tution of Texas, which reads, in part, as follows:

   (a) The Legislature may by special statute provide for consolidation of governmental offices and functions of government of any one or more political subdivisions comprising or located within any county. . . .

   (b) The county government, or any political subdivision(s) comprising or located therein, may contract one with another for the performance of governmental functions required or authorized by this Constitution or the Laws of this State, under such terms and conditions as the Legislature may prescribe.

As Korioth is prone to argue, these provisions can give rise to the negative implication that the legislature may not establish multicounty entities with governmental functions. Since Korioth is effectively prone for other purposes, as discussed *infra,* we do not reach this question of construction of the Texas constitution.

4. *See* 40 U.S.C. § 461(i)(6). Appellant's assertion here is that since art. 1011m is in violation of the state constitution, *see* note 2, *supra,* the regional planning agencies cannot be said to be empowered under state law to perform planning. Thus, the argument goes, federal funding for the Texas Regional Commissions is in violation of the federal authorizing statute.

5. *See Schlesinger v. Reservists Comm. to Stop the War,* 1974, 418 U.S. 208, 218, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706, 717; *United States v. Richardson,* 1974, 418 U.S. 166, 196 n. 18,

to render advisory opinions, but rather are to decide specific issues for parties with real disputes.[6] Cases are to be decided on the narrowest legal grounds available,[7] and relief is to be tailored carefully to the nature of the dispute before the court.[8]

Although the Supreme Court has warned that generalizations about the law of standing are of dubious worth,[9] the currency of *Baker v. Carr*'s often quoted formulation of the general question to be considered seems not to have been devalued:

> Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing.

369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678.

Recent decisions have indicated that in answering this question, a court's focus should be on whether the complaining party has alleged any "injury in fact" which distinguishes that party, in relation to the alleged violations, from the undifferentiated mass of the public.[10] The requirement that a complaining party allege a specific injury in fact appears to be necessary so that all of the above discussed policy objectives may be furthered—although an irate citizen might vigorously pursue litigation challenging alleged governmental illegalities, a court cannot fashion a specific remedy without some finding of specific harm. The specific, distinct injury may be small,[11] but some such injury must be alleged for the litigant to have standing.

Prior to 1974, there were some indications of the development of a doctrine whereby requirements for citizen standing in "public actions" would be quite minimal.[12] Citizens able to show no spe-

94 S.Ct. 2940, 2956 n. 18, 41 L.Ed.2d 678, 699 n. 18 (Powell, J., concurring); *Flast v. Cohen*, 1968, 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947, 960. To whatever extent this doctrinal barrier is based purely on policy considerations, it is of course subject to Congressional revision.

**6.** See *Flast v. Cohen*, 1968, 392 U.S. 83, 96–97, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947, 959–60.

**7.** The Court has been particularly concerned to avoid prematurely passing on constitutional questions. See *Ashwander v. Tennessee Valley Authority*, 1936, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–483, 80 L.Ed. 688, 709–11 (Brandeis, J., concurring); *Schlesinger v. Reservists Comm. to Stop the War*, 1974, 418 U.S. 208, 221, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706, 719.

**8.** See *Schlesinger v. Reservists Committee to Stop the War*, 1974, 418 U.S. 208, 217, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706, 716 n. 7, 719.

**9.** *Association of Data Processing Serv. Orgs. v. Camp*, 1970, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, 187 (Douglas, J.) ("generalizations about standing to sue are largely worthless as such.")

**10.** See, e. g., *Schlesinger v. Reservists Comm. to Stop the War*, 1974, 418 U.S. 208, 216–227, 94 S.Ct. 2925, 2930–2935, 41 L.Ed.2d 706, 716–22; *Sierra Club v. Morton*, 1972, 405 U.S. 727,

740–41 & n. 16, 92 S.Ct. 1361, 1368–1369 & n. 16, 31 L.Ed.2d 636, 696 & n. 16. See also *Pevsner v. Eastern Airlines*, 5 Cir. 1974, 493 F.2d 916.

The "injury in fact" requirement means that a demonstration of "adverseness" alone is not enough to confer standing—no matter how sincere the plaintiff's motives in pursuing the litigation, there is no standing unless the dispute is made "concrete" by the allegation of specific harm. See *Schlesinger, supra*, at 225, 94 S.Ct. at 2934, 41 L.Ed.2d at 721.

**11.** See *United States v. SCRAP*, 1973, 412 U.S. 669, 683–90 & n. 14, 93 S.Ct. 2405, 2413–2417 & n. 14, 37 L.Ed.2d 254, 268–71 & n. 14. The contrast between the relaxed requirements for standing in *SCRAP*, and the more stringent barriers in *Richardson* and *Schlesinger, supra*, may be attributable to the different roles of courts in cases involving statutory review of administrative action (*SCRAP*) and in citizen suits to enforce the Constitution. See *The Supreme Court, 1973 Term*, 88 Harv.L.Rev. 41, 236–43 (1974).

**12.** See L. Jaffe, Judicial Control of Administrative Action, 459–500 (1965); Jaffe, *The Citizen as Litigant in Public Actions: the Non-Hohfeldian or Ideological Plaintiff*, 116 U.Pa.L.Rev. 1033 (1968). See also *Atlee v. Laird*, E.D.Pa. 1972, 339 F.Supp. 1347, 1354–57, dismissed on other grounds, 347 F.Supp. 689, implicitly crit-

cialized injury were held to have standing to bring a constitutional challenge against Congressmen's membership in the Armed Forces Reserves in *Reservists Committee to Stop the War v. Laird,* D.D.C.1971, 323 F.Supp. 833, *aff'd without opinion,* 162 U.S.App. D.C. 19, 495 F.2d 1074 (No. 71–1535, Oct. 31, 1972).[13] The Supreme Court, however, reversed, emphasizing the requirement that plaintiffs must show a concrete injury which differentiates their interest in the case from that of all other citizens. *Schlesinger v. Reservists Committee to Stop the War,* 1974, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706.[14] Thus, the thin ice which may have supported generalized citizen standing to pursue "public actions" before *Schlesinger* seems to have melted with that case.[15]

■ It is tautologically clear that a citizen who asserts only his citizen status as a basis for standing to pursue constitutional or statutory claims has not specified any injury which sets him apart from the mass of citizens who desire that the state adhere to the legal amenities of governance. If Korioth has stand-

ing, then, it must be based either on his status as a taxpayer or that as a legislator.

## B. Taxpayer Korioth

■ The Supreme Court case which now marks the limit in allowing taxpayers *qua* taxpayers standing to litigate a general constitutional claim is *Flast v. Cohen,* 1968, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, in which plaintiffs alleged that congressional appropriations providing funds to religious schools violated the establishment clause of the first amendment. The *Flast* Court considered the general question to be "whether there is a logical nexus between the status asserted and the claim sought to be adjudicated," and formulated the specific test for federal taxpayers as follows:

First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending

---

icized in *Schlesinger v. Reservists Comm. to Stop the War,* 1974, 418 U.S. 208, 222 & n. 12, 94 S.Ct. 2925, 2933 & n. 12, 41 L.Ed.2d 706, 719 & n. 12.

**13.** In granting these citizens standing to sue on behalf of all citizens, the district court perceived itself to be facing a narrow exception to the rule against generalized citizen standing. 323 F.Supp. at 840.

**14.** *Schlesinger* cites, *inter alia, Troutman v. Shriver,* 5 Cir. 1969, 417 F.2d 171, *cert. denied sub nom., Troutman v. Rumsfield,* 1970, 397 U.S. 923, 90 S.Ct. 915, 25 L.Ed.2d 103, for the proposition that all the circuits except the District of Columbia Circuit which had considered the question had held that no citizen standing could be recognized in the absence of an allegation of specific injury, 418 U.S. at 222 n. 12, 94 S.Ct. at 2933, n. 12, 41 L.Ed.2d at 719 n. 12. *Troutman* is thus good authority for that point, even if its treatment of the claim of competitive injury, relying on *Association of Data Processing Serv. Orgs. v. Camp,* 8 Cir. 1969, 406 F.2d 837, is questionable after the Supreme Court's reversal of that case, 1969, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184.

**15.** A major theme the Court advances in rejecting generalized citizen standing is the sug-

gestion that when all citizens are affected in an undifferentiated way by some alleged governmental illegality, recourse through the political process is possible and is the constitutionally preferred method for resolving the dispute. *See United States v. Richardson,* 1974, 418 U.S. 166, 178, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678, 689; *id.* at 188, 94 S.Ct. at 2952, 41 L.Ed.2d at 695 (Powell, J., concurring). Suggestions had been made that this rationale should not apply when a plaintiff alleges that the challenged illegality impedes the effectiveness of remedies through the political branches, with the recognition of voter standing to challenge malapportionment cited as an example of this exception. *See* McCloskey, *The Supreme Court, 1961 Term—Foreword: The Reapportionment Case,* 76 Harv.L.Rev. 54, 71–74 (1962). *Richardson* and *Schlesinger,* however, arguably faced allegations which would fall within this same exception, and plaintiffs were held to have no standing, *see The Supreme Court, supra* note 11, at 242; note 17, *infra,* so perhaps standing in *Baker v. Carr,* 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and other such cases is now best seen as resting on the specific injury to those voters whose decisionmaking share is diminished by the malapportionment.

clause of Art. I, § 8 of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. . . .

*Id.* at 102–03, 88 S.Ct. at 1954, 20 L.Ed.2d at 963.

▆▆▆ Korioth objects to the use of local, state, and federal funds derived from his taxes in the administration of the Texas regional planning agency scheme, and urges that *Flast's* two-part test supports his standing. He trips and falls, however, on the respective qualifications which *Flast* adds to each part of its test. Korioth is basically challenging an "incidental expenditure of tax funds in the administration of an essentially regulatory statute" and, by analogy to the federal situation in *Flast,* alleges

"simply that the enactment is generally beyond powers delegated to" the state legislature rather than showing that "the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the" legislature's taxing and spending power.[16]

That the rationale under which taxpayers were granted standing in *Flast* is an extremely limited one has become apparent with the Supreme Court's decisions in *United States v. Richardson,*[17] and in *Schlesinger, supra,* 418 U.S. at 227–229, 94 S.Ct. at 2935–2936, 41 L.Ed.2d at 722–23. We need not here decide what remains of the fading *Flast* doctrine, since Korioth would not have standing under the *Flast* test even if it were broadly construed.

## C. Legislator Korioth

▆▆▆ Having found the proffered legs of citizen and taxpayer standing to be infirm, we turn to Korioth's assertion that the crutch of his special status as a state legislator can support this action. Several decided cases have held that in certain circumstances a legislator, in that capacity, may have standing to challenge official actions.[18] Generally, these cases

---

**16.** We find it unnecessary to parse out in detail the different claims which might be raised by Korioth as a federal, state, and local taxpayer. To have standing in regard to any of them, Korioth must either meet the narrow *Flast* criteria, *see* note 19 *infra,* or allege the type of injury in fact which would give rise to standing generally, *cf. Doremus v. Board of Educ.,* 1952, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475, 480 (state taxpayers had no standing to challenge statutorily required school prayers). Korioth has done neither.

**17.** 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). Richardson, a taxpayer, had tried without success to obtain from the government an account of CIA expenditures. He argued this refusal was in violation of Art. I, § 9, cl. 7 of the U. S. Constitution (". . . a regular Statement of Account of the Receipts and Expenditures of all public Money shall be published from time to time."). The district court dismissed for lack of standing and because the matter raised political questions. The Court of Appeals for the District of Co-

lumbia Circuit reversed on the standing issue, 465 F.2d 844 (3 Cir. 1972) (en banc), reasoning that under the *Flast* rationale, plaintiff had challenged a statute (concerning reporting of CIA expenditures) integrally related to his ability to challenge appropriations. The Supreme Court reversed, 5–4, with Chief Justice Burger writing the majority opinion which effectively limited taxpayer standing to the narrow confines of the *Flast* test set out in the text. Justice Powell, who concurred in the majority opinion, added a separate opinion in which he argued that the Court should recognize inherent fallacies of the *Flast* rationale and limit taxpayer standing to establishment clause cases only. *Flast* has thus been relegated to the status of a narrow exception, however formulated, to the rule against generalized taxpayer standing laid down in *Frothingham v. Mellon,* 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

**18.** *See Coleman v. Miller,* 1939, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385; *Kennedy v. Sampson,* 1974, 167 U.S.App.D.C. 192, 511 F.2d 430;

have focused on allegations that the challenged action undermined the effectiveness of the exercise of a specific power of the legislator.[19] Another basis for legislator standing has been found in the duty of the legislature to investigate the acts of the executive in relation to possible impeachment,[20] although this basis for standing has been criticized.[21] Whatever the validity of these bases for legislator standing, they do not apply to Korioth—he cannot allege that the effectiveness of his vote, or of any other legislative power he may have, has been impeded by the vote of a majority of the legislature to enact the regional planning scheme, nor by the action of the state executive in implementing it. No question of possible impeachment has been raised.

None of the cases has indicated that a legislator, simply by virtue of that status, has some special right to invoke judicial consideration of the validity of a statute passed over his objecting vote.[22] We refuse to go that far here. In the circumstances of this case, the plaintiff's seat in the legislature confers no standing.

## II. INTERVENTION

In the order dismissing Korioth's complaint for lack of standing, the trial court also denied without comment the motion of the City of Farmers Branch to intervene. The City here urges this denial was in error, since it had alleged in its motion that the factors which render permissive intervention appropriate under Federal Rule of Civil Procedure 24(b) were present.[23] The question on appeal, however, is not whether those factors were present, but whether the trial court committed a clear abuse of discretion in denying the motion.[24]

---

Comment, *Congressional Standing to Challenge Executive Action*, 122 U.Pa.L.Rev. 1366 (1974).

**19.** *Coleman, supra* note 18, involved a challenge by state legislators that the lieutenant governor, in a procedure violative of the U. S. Constitution, had broken a tie vote in the State Senate in favor of ratification of a constitutional amendment. The Supreme Court held that the plaintiffs had a sufficiently "plain, direct and adequate interest in maintaining the effectiveness of their votes" to give them standing. 307 U.S. at 438, 59 S.Ct. at 975, 83 L.Ed. at 1388.

*Kennedy, supra* note 18, recognized standing in the suit of a U. S. Senator to compel the official publication of a validly enacted law which had remained unpublished because of an attempted, but legally ineffective, pocket veto by the President. The court found that Kennedy's "object in this lawsuit is to vindicate the effectiveness of his vote." 511 F.2d at 436.

**20.** *See Mitchell v. Laird*, 1973, 159 U.S.App. D.C. 344, 488 F.2d 611, 613, *Holtzman v. Schlesinger*, E.D.N.Y., 361 F.Supp. 553, *rev'd*, 2 Cir. 1973, 484 F.2d 1307, *cert. denied*, 1974, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286.

**21.** *See Holtzman v. Schlesinger, supra,* note 20, at 1315; Comment, *supra* note 19, at 1375–78.

**22.** In a situation in some ways analogous to the case before us, the dissenting member of the three-person Texas Parks and Wildlife Commission challenged in federal court the decision of the majority to use available federal funds to develop a certain area as a park. *Johnson v. Morton*, 5 Cir. 1972, 456 F.2d 68. The dissenter argued that the manner in which the decision was made violated the federal authorizing statute and regulations. His suit was dismissed for lack of standing. Id. at 73–74.

**23.** The City asserted that all relief sought by Korioth applied equally to the City, that such relief arose out of the same transaction or series of transactions, that questions of law and fact common to both Korioth and the City would arise in the action, that granting the motion would avoid a multiplicity of actions, would not unduly delay or prejudice the adjudication of the rights of the original party, and was in the interest of justice. *Cf.* Fed.R.Civ.P. 24(b).

**24.** *See Allen Calculators, Inc. v. National Cash Register Co.,* 1944, 322 U.S. 137, 142, 64 S.Ct. 905, 907, 88 L.Ed. 1188, 1192. ("The exercise of discretion in a matter of this sort is not reviewable by an appellate court unless clear abuse is shown . . . ."). *See also* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1923 at 631–32 (1972) ("there apparently is not a single case in which an appellate court has reversed solely because of an abuse of discretion in denying permissive intervention.").

The court below may have been influenced in its denial of the City's motion by its conclusion that the main plaintiff had no legally cognizable legs for standing. We cannot say that it was clearly unreasonable for the lower court to prefer not to create a commensalist for a non-existent host. Even if by osmotic transmutation, or some other jurisprudential phenomenon the intervenor might have been allowed to pursue alone the cause of action, the judge committed no gross error in rejecting that evolution of the case, especially when no barrier appeared to preclude the City from bringing a new action in its own name.[25] The denial of the motion to intervene is affirmed.[26]

Finally, we emphasize that our diagnosis on Korioth's lack of standing and our inability to find clear abuse of discretion in the denial of the City's motion to intervene reflect no opinion on the merits of the constitutional and statutory issues underlying this case, nor on the standing of the City to pursue its own action.[27]

Affirmed.

25. When an appellant has other adequate means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face. *See Levin v. Ruby Trading Corp.,* 2 Cir. 1964, 333 F.2d 592, 594; *Cresta Blanca Wine Co. v. Eastern Wine Corp.,* 2 Cir. 1944, 143 F.2d 1012.

26. A line of old authorities, including Supreme Court cases, indicates that the proper disposition of an appeal from a denial of a motion for permissive intervention in which no abuse of discretion is shown is a dismissal, since no appealable final order has been entered. *See Allen Calculators,* note 24 *supra.* As commentators have persuasively argued, however, a much better practice would be simply to regard any denial of a motion to intervene as a final order, and, when the intervention sought is permissive and no abuse of discretion is shown, to affirm the denial. *See, e. g.,* 7A C. Wright & A. Miller, *supra* note 24, § 1923 at 626–32; 3B J. Moore, Federal Practice ¶ 24.15 (1974). This view has been reflected in a few recent cases. *See, e. g., Levin v. Ruby Trading Corp.,* 2 Cir. 1964, 333 F.2d 592, 594. In any

event, the order of the district court in the case now before us was clearly final as to the entire action, so the affirmance of the order is the proper disposition.

27. Korioth argues that if we find that he does not have standing to pursue this litigation, no one would have standing to pursue it. Even if this were true, the Supreme Court has stated that this is not a reason for finding that a party who can show no concrete injury has standing. *See United States v. Richardson,* 1974, 418 U.S. 166, 178, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678, 689; *Schlesinger v. Reservists Comm. to Stop the War,* 1974, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706, 722. The state in its brief asserts that only the United States would have standing to litigate the issues raised in the complaint of Korioth. We do not, of course, reach this question, but note in passing that it is not difficult to hypothesize situations in which the actions of a regional planning commission in Texas could cause distinct and concrete injuries to certain entities or individuals which would set them apart from the general mass of citizens to which Korioth, for the purposes of this suit, belongs.