**Robert Anthony REED, et al.,
Plaintiffs,**

v.

**James A. RHODES, et al., Defendants.**

**No. C73–1300.**

United States District Court,
N.D. Ohio, E.D.

Nov. 27, 1984.

James L. Hardiman, Cleveland, Ohio, Herbert Henderson, N.A.A.C.P., Brooklyn, Ohio, for plaintiffs.

James G. Wyman, Cleveland, Ohio, Thomas Simiele, Bratenahl, Ohio, George Meisel, James Murphy, William Baughman, Jr., Squire, Sanders & Dempsey, Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendants.

Jeremiah Glassman, Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., for amicus curiae.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

On November 21, 1984, this Court in a very brief order denied the motion of three members of the Cleveland Board of Education for a temporary restraining order to prevent defendant Cleveland Board of Education from "unilaterally deciding on the sale of the school (board's administration) building." This memorandum opinion will not only address "the legitimate concerns of the parties as stated in the Request," as noted in this Court's November 21st order, but will also set forth the reasons that the motion for a temporary restraining order was denied.

## FACTS

On November 20, 1984 at 11:30 a.m., Mildred R. Madison, Edward S. Young and Stanley E. Tolliver, three members of the Cleveland Board of Education, filed a "Request for Order of Court". This brief request made the following assertions:

1. The Cleveland Board of Education was to meet on November 20, 1984 at 6 p.m. to consider the sale of the Cleveland Board of Education Administration Building to the City of Cleveland.

2. Attached to the Request was the proposed resolution to be voted on by the Cleveland Board stating that the purchase of the administration building by the City was "for purposes of making the Property available for development of a first-class downtown hotel ... by a private developer selected by the City."

3. The Board of Education had received "no management impact studies, cost/benefit analyses or any other reports from the Superintendent [of the Cleveland Public Schools]."

4. The sale of the administration building would "fragment the facility utilization five year master plan" that the Cleveland School District was to develop under order of this Court.

5. The impact of the sale of the building on the Remedial Orders of this Court [regarding desegregation of the Cleveland Public Schools] is "unknown."

6. The Board's sale of the building would violate Ohio Revised Code section 3313.41 and that by selling the building to the City, the Board is "circumventing said law."

The three Board members [hereinafter referred to as "the moving parties" or "the movants"] asked this Court to "issue a Temporary Restraining Order preventing the Defendant Cleveland Board of Education from unilaterally deciding on the sale of the school building until the Court approves of a facility master or until such time as a complete and comprehensive study is completed on the effect the sale would have on the Remedial orders and said study be received by the community." In addition, the moving parties asked the Court to rule on "the legality of circumventing state law by selling the Administration Building to a developer through the city."

The Court takes judicial notice of the fact that at the Board meeting on November 20, 1984, the Cleveland Board of Education voted to table the proposed resolution on the sale of the administrative building.

## STANDING OF THE MOVING PARTIES

The initial question this Court must answer is whether the moving parties, three

members of the Cleveland Board of Education, have standing to move for a temporary restraining order in this action. In other words, this Court must examine the identity of the moving parties, what their status is in relation to the already existing parties to this action, and finally the moving parties' real interest in the act which they complain about and seek to temporarily enjoin.

While it is true that the Cleveland Board of Education is one of the named defendants in this action, none of the movants was individually named as a party in the original action. At the same time, none of the movants are plaintiffs to this action; the named plaintiffs are Robert Reed, other students attending the Cleveland Public Schools, and the NAACP. However, to the degree that Federal Rule of Civil Procedure 25(d) would substitute the moving parties for the individuals who were on the Board of Education at the time this suit was commenced, the movants would be automatically substituted as defendants.

■ Even if the movants qualify as party defendants in an individual capacity, the issue of whether they have standing to enjoin the proposed sale of the administration building remains. Under principles of prudential standing, a party must assert an injury peculiar to himself or a distinct group of which he is a part and not simply a generalized grievance shared substantially in equal measure by all or a large class of citizens. *Wisconsin v. Zimmerman,* 205 F.Supp. 673 (W.D.Wisc.1962). In other words, the movants must show as citizens that they will sustain a concrete injury which differentiates them from all other citizens. *See Korioth v. Briscoe,* 523 F.2d 1271 (5th Cir.1975). The moving parties in this case do not state in their Request why they as Board members will be uniquely injured by this sale; their only claim is that with additional information "which could have been subject to community input," they would have had "sufficient information [as] board members ... to protect the Orders of the Court and the interests of the community and its students."

While it is true that members of the Board of Education have a responsibility to execute the orders of this Court, their obligation is no greater than that upon other members of the school district, including school administrators, teachers, other district personnel, parents and students. Indeed, the Board has never acted in the past, nor has this Court ever designated the Board, as the guardian or protector of the Court's orders. To grant standing to organizations or individuals would be dangerous in that it would allow segments of the community to designate which policies promote the Court's orders and which do not. While individuals and groups may hold such opinions, the sole power to "protect" and interpret this Court's orders lies with this Court itself.

Of greater concern to this Court is the apparent objective of movants to prevent the making of a political decision which they did not agree with by asking the Court to intervene. It has been held that an elected official lacks standing to challenge a particular decision or course of action that he has the power to vote upon unless he asserts that his voting power or rights have been impeded. *See Korioth v. Briscoe,* 523 F.2d 1271, 21 Fed.Rules. Serv.2d 380 (5th Cir.1975) (state legislator lacks standing to challenge constitutionality of a state statute where he cannot allege that the effectiveness of his vote or any other legislative power he might have had was impeded either by the majority vote or by implementation of the statute). In the instant case, the three members of the Board of Education do not allege that they were prevented from voting on the proposed sale; that their efforts to persuade and campaign for their point-of-view on the proposed sale were interfered with or that if the sale were approved, their voting power on future actions would be circumscribed. This Court is reluctant to insert itself into the legislative functionings of the Board; the Court does not wish to play the role of referee between various factions on the Board.

■ Thus, even were the defendants to establish that their interest as members of the Board subjects them to special injury were this proposed sale to be passed (which they have not shown), this Court may decline to pass on the case since it presents a political question. *See Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Thus, the movants lack standing to bring this motion for a temporary restraining order. Plaintiff NAACP possessed the requisite standing to challenge the proposed sale and the vote; however, this group nor others which may have been able to demonstrate a specific harm did not bring this motion. Since the movants lack standing, the temporary restraining order request must be denied.

## II.

While this Court is respectful of the legal requirements which compel it to deny the temporary restraining order, it is also aware that movants' Request raises serious issues about the effect of the proposed sale of the school administration building on this Court's Remedial Order and other orders it has issued in this case.

In the wake of numerous school-closings by the Cleveland Board of Education and the implementation of this Court's Remedial Order in 1979, this Court on February 23, 1981, ordered the Cleveland Board to prepare a comprehensive facilities utilization plan. On February 25, 1982, the Board approved a resolution entitled "A Management Approach for the Preparation of a Five-Year Facility Utilization Program" [hereinafter referred to as "the Program"]; the resolution was filed with this Court on March 3, 1982.

The Board's Facility Utilization Plan, which was to be the outgrowth of its own Program document, was to be submitted to this Court on November 1, 1982. However, the Board did not meet the submission deadline and the Court reluctantly granted the Board numerous extensions. Finally, the Court ordered that the Facility Utiliza-

tion Plan would have to be submitted no later than December 1, 1983.

On December 1, 1983, two years after the original deadline and four years after the start of implementation of the Remedial Order, the Board submitted its Facility Utilization Plan to the Court. In its order of June 4, 1984, this Court found it could not approve the Board's Facility Utilization Plan. The Court accepted the conclusion of the Ohio State Board of Education and State Superintendent's Analysis that "the Board has not done sufficient planning and does not possess sufficient resources to guarantee successful implementation." Order of June 4, 1984, at 10–11. The Court therefore ordered the Board to consult with the State Superintendent to work toward the creation of a revised Facilities Utilization Plan. The State Superintendent was to have primary responsibility for the supervision of a revised Plan. Order, *supra,* at 16. Based upon a work schedule submitted by the State and the parties the revised Plan was to be submitted to the Court by June 1, 1985 for the Court's approval.

This Court has yet to receive the revised Plan from the State and the Board. Nor has the Court received any interim communications from the State Superintendent as to the effect of the sale of the administration building on the Remedial Order or the revised Plan.

This Court has set forth at considerable length the history of the school facilities proceedings before it to demonstrate the absence of timely, thoughtful, and coherent planning on the part of the Cleveland City School District and Board of Education when it comes to facilities. Although "school authorities are traditionally charged with broad power to formulate and implement educational policy," *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), the Cleveland Board of Education and School District have repeatedly shown either a lack of will or ability to administer their system. This conclusion is not simply that of this Court;

as already noted, the Ohio State Board of Education and State Superintendent both concluded that the Board had not sufficiently planned and was unable to write its own Facilities Utilization Plan.

This Court is very concerned that in the absence of a comprehensive and Court-approved Facilities Utilization Plan, Defendant Cleveland Board of Education would take a formal vote on the sale of its own administrative building. In calling for the Board to examine the consequences of its actions, the Court is doing no more than holding the Board to its own promises. In the Program it submitted to this Court, the Board said it would not only develop a plan for school closings but create a plan encompassing "*all* sites and facilities, including the following: properties, schools, warehouses, food preparation and service facilities, vehicle storage and maintenance facilities, *administrative facilities*, service facilities, operations facilities." Program, *supra*, at 31 (emphasis added).

Furthermore, this Court has already issued an order which specifically includes the School District's administration building. *See*, Order, *Reed v. Rhodes*, No. C73–1300 (N.D.Ohio), filed July 25, 1983). In that order, in response to the Parties' agreement to exempt the School District's administration building from the Facility Utilization Program, this Court stated "the parties may not, on their sole authority, alter the terms of the Facility Utilization Program which was approved by Court Order." This Court has never exempted the administration building from any facilities Plan, and the Board was put on proper notice and should have been aware from this Court's July 25, 1983 order that the administration building was to be within the proper scope of its facilities planning.

Even if through lack of care and attention to the orders of this Court the Board had forgotten that its planning was to include the administration building, there is no reason for the Board to have neglected consideration of the consequences of the proposed sale. This Court takes judicial notice of discussion in the community about the relocation of the administrative staff in the event the current administration building is sold. One suggestion which has come to the attention of this Court has been to transfer the administrative offices to the Cleveland School of Science, the so-called "science magnet," at Lakeside Avenue and E. 14th Street. The result of such a move would be the inevitable displacement of the students at the science magnet and the "closing" albeit only temporarily of a school. Thus, the potential closing of a school should have alerted the Board for the need to consider the consequences of the proposed sale. What strikes this Court as so disturbing is the fact that the Board has not even fully laid out proposed relocation sites and their effect on the system as a whole. Instead, it has left not only this Court but the entire community to engage in speculation about the effects of the proposed sale. Even if the science magnet were successfully relocated, the Board has not fully thought out the "domino" or "ripple effect" displacement will have; given limited resources, the question is what will be the final straw, namely "who will be left out in the cold?" This is not only irresponsible as a prudential matter but constitutes "bad government"; the community does not expect its elected leaders to promote misinformation and fear but assumes they will seek to enlighten and elucidate.

Another "plan" which has circulated in the community without clarification or comment by the Board is to relocate the administrative staff to William Dean Howells school on the near West Side. Presently William Dean Howells contains a registration center and administrative offices. Another possible relocation site mentioned is the Harvard School at Broadway and Miles. Without further discussion of the danger of displacing students and closing schools, it concerns this Court that the administrative offices of the Board might be divided between two or three separate buildings. Given the numerous administrative failures when the administrators have all been housed together, this Court is troubled with the coordination and managerial problems that may arise if the District's admin-

istrators have to deal with one another over a distance of even a few blocks. In any case, this Court believes the Board should once again consider how it will divide or unify its various officers, facilities and personnel. Although this Court has ordered the School District to implement a "unitary and decentralized organizational framework," *see* Order filed April 6, 1981, at 3, this decentralization does not necessarily mean physically divided or separated offices. Decentralization is more an issue of a chain of command or the concentration of managerial authority than where particular managers sit.

This Court has also been asked to rule on Ohio Revised Code section 3313.41. Whether the proposed sale of the administration building violates the statutory requirement for public bidding or complies with the exemption for transfers to municipalities appears to be solely a matter of state law; this Court is not required to rule on this matter particularly in light of its denial of the temporary restraining order. However, to the degree that the school sale affects the Remedial Orders of this Court, the state law may be discussed.

The proposed resolution attached to the movants' Request makes it clear that the Board is disposing of the property to the city to promote "the development of a first-class downtown hotel." By the Board's own admission, this sale to the City appears to be a means of getting the property into the hands of a private developer. This Court does not expect the School Board to wear formalistic blinders, couching sales to the City in language which makes the Board appear to be unaware of the city's ultimate purposes. At the very least, the Board should have sought official legal advisory opinions as to whether its proposed sale to the City would comply with ORC § 3313.41.

In all of these remarks, however, the point should not be lost: development of the City is not the responsibility of members of the School Board or the School Administration. This Court finds it lamentable how much time has been spent by Board members and other officials on a matter which has little if anything to do with education. The sale of the administration building has not been handled as a purely managerial disposition of school district assets; this Court takes judicial notice of the political battle being waged over the potential value of the administrative building site to the economic development of downtown Cleveland. However, such concerns are properly those of the Mayor and other city officials. The Board's mission is to comply with the Remedial Order of this Court, which means in the broadest sense to deliver the finest education possible to the school children of Cleveland. At this critical stage of the implementation process, anything which distracts and detracts from efforts to achieve educational excellence and efficient school district operations is not only a waste of time but counterproductive.

This Court is hopeful that the State Superintendent and the Board will include its analysis of the effects and relocation options in its Revised Facilities Utilization Plan. The Board should exercise prudent judgment and take no further action on the proposed sale until it has fully examined the implications of such action. Certainly if the State Superintendent submitted a report to this Court on the proposed sale or submitted its revised Facilities Utilization Plan including discussion of the administrative building before June 1985, this Court could consider an appropriate motion from the Board. However, this Court remains steadfast in (1) requiring a comprehensive Facilities Utilization Plan from the State and the Board and (2) reserving its approval on such a Plan.

This Court does not wish to become involved in the multitude of administrative decisions the Board must take to operate a school district. At the same time, at this late stage of the implementation of the Remedial Orders, the Court cannot remain silent in the face of administrative shortsightedness. This Court owes a duty to the Constitution of the United States as its local guardian to see that public education

in Cleveland is furnished in obedience to the 14th Amendment. In this regard, it is the responsibility of this Court in the face of what may appear to be purely "administrative" or electoral matters to never lose sight of their consequences on the education and sound management of the Cleveland School District.

The temporary restraining order is hereby denied.

IT IS SO ORDERED.