STATE OF IOWA v. W. A. RICHARDS, Appellant.

**Burglary:** IMPANELING GRAND JURY: PLACE OF HOLDING COURT. The adjournment of court duly convened in the court room to another room in the court house which was adequate for the purpose of impaneling the grand jury, and to permit a defendant charged with crime who was in a weak physical condition to be present, was not a violation of Code, sections 283 and 286, providing that judicial proceedings must be public and held at the place provided by law.

**Evidence:** TELEGRAMS. A telegram sent by defendant to his associate in the crime, which was shown to have been agreed upon beforehand and which corresponded with the agreement, was admissible; especially as there was evidence tending to show that defendant sent it.

**Conversations in defendant's hearing.** In a prosecution for burglary claimed to have been planned by defendant, evidence of a conversation between two others relative to a deposit of the money stolen, was admissible, there being evidence that defendant was within hearing distance.

**Cross-examination:** PREJUDICIAL ERROR. Where a physician testified that defendant employed him shortly after the burglary and paid him for his service requesting that he "keep still," it was not prejudicial error to refuse the cross-examination of the physician as to his qualification to practice medicine.

**Evidence:** GENERAL MORAL CHARACTER. Where a witness has testified in chief to his knowledge of the general moral character of defendant, and that it was good, he may be cross-examined on that question as to his knowledge of any matters tending to discredit his estimate of defendant's character. In the instant case, moreover, the answers on cross-examination are held to have been without prejudice.

**Instructions:** FLIGHT. In a prosecution for burglary, an instruction that flight is a circumstance which *prima facie* indicates guilt, is not objectionable as charging that it was presumptive evidence of guilt.

*Appeal from Warren District Court.*— HON. J. H. APPLE-
GATE, Judge.

THURSDAY, FEBRUARY 9, 1905.

A JURY found the defendant guilty of the crime of
burglary, and he appeals from a judgment on the verdict.—
*Affirmed.*

*Kinkead & Mentzer,* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Lawrence De
Graff,* Assistant Attorney-General, for the State.

SHERWIN, C. J.— The burglary in question was
planned by the defendant, and was executed by Frank Baird
and Chas. Redup.  Baird was shot immediately after he

1. IMPANELING
GRAND JURY:
place of hold-
ing court.

left the house that he had entered, and was
soon thereafter captured, and was held
to answer for the crime.  A regular
term of the district court was held soon thereafter at
Indianola, the county seat of Warren county.  After the
court was convened in its regular room in the courthouse,
and opened for the transaction of business, the presiding
judge announced from the bench that the session would be
adjourned to the office of the county superintendent, on the
first floor of the courthouse, for the purpose of impaneling
the grand jury.  This was done, and the grand jury was
impaneled in said room, and afterward returned the indict-
ment on which the defendant was tried.  Baird was at that
time in a weak physical condition, and the court's action
was for the purpose of having him present when the grand
jury was impaneled without physical injury to him.  The
defendant was not held to answer and no one appeared for
him at that time.  The room in question was large enough
to accommodate the court and its officers, the jurors and
attorneys, and a number of the general public.  After it

had been well filled, the door thereof was closed for a short time, for the purpose of avoiding overcrowding. Because of the foregoing facts, the appellant contends that the court was not legally in session, nor the grand jury legally impaneled, and that the indictment was invalid. Section 286 of the Code provides that " courts must be held at the place provided by law, except for the determination of actions, special proceedings, and other matters not requiring a jury, when they may, by consent of the parties therein, be held at some other place." And section 283 of the Code provides that all judicial proceedings must be public, unless otherwise specially provided by statute or agreed upon by the parties.

The manifest purpose of the requirement that courts shall be held at the place provided by law is to give due stability and dignity to the administration of justice, and to protect the interests of litigants. In *Hobart v. Hobart*, 45 Iowa, 501, it was said that, to give existence to a court, its officers and the time and place of holding it must be such as are prescribed by law. This rule was recognized in *Casey v. Stewart, Adm'r*, 60 Iowa, 160; *Moore v. C. & St. P. & K. Ry. Co.*, 93 Iowa, 484, and again in *Funk v. Carroll County*, 96 Iowa, 158. In the *Funk Case* the issue was tried to the court, and the testimony of a witness was taken at his residence, away from the courthouse, and we held that the court had no authority to adjourn to a private house for the purpose of a trial. There is a well-defined distinction, however, between the cases cited and the one at bar. Here the court was formally and regularly convened at the courthouse, in its own room, and the adjournment was to a room in the same building. It may readily be conceded that the word " place " may sometimes mean a particular room or a particular spot in a room, but we are cited to no judicial construction so limiting it in a case of this kind. If the court be held in the building provided by law, though not in the room set apart for that purpose, we think the requirement

and reason of the statute are fully met. To limit the place to a particular room in the courthouse would in many instances interfere with the reasonable dispatch of business, and would serve no recognized-purpose of the statute; hence we do not believe that it was the legislative intent to so limit the language. The proceedings when the grand jury was impaneled were public, within the meaning of the statute. The public was admitted, to the capacity of the room, and so far 'as the record shows, a large proportion of those who desired to attend were present. *State v. Worthen,* 124 Iowa 408; *Myers v. State,* 97 Ga. 76 (25 S: E. Rep. 252); *State v. Brooks,* 92 Mo. 542 (5 S. W. Rep. 257, 330); *Stone v. State,* 2 Scam. 326.

The telegram which the State claimed was sent by the appellant to Baird was properly admitted in evidence. Baird testified that its contents were agreed upon beforehand, and it corresponded with such agreement. Furthermore, there was testimony tending to identify the defendant as the person who delivered it to the operator for transmission to Baird. The opinion or best judgment of a witness is competent when he cannot positively identify the person, and the value thereof is a question for the jury. *State v. Lucas,* 57 Iowa, 501; *State v. Seymour,* 94 Iowa, 706.

2. EVIDENCE: telegrams.

There was evidence tending to show that the appellant was within hearing distance, and could have heard the conversation between Wilcox and Long relative to the deposit of the money which the burglars secured, and we think the conversation was properly admitted in evidence.

3. CONVERSATIONS IN DEFENDANT'S HEARING.

Dr. Tandy, a witness for the State, testified that the appellant had employed him to treat Baird's gunshot wound soon after he was captured, and that he paid him for such services, and requested him to "keep still." On cross-examination the doctor was not permitted to answer a question, touching his qualifica-

4. CROSS-EXAMINATION: prejudicial error.

tions to practice medicine in this State. The testimony might well have been received, but its exclusion could not have been prejudicial to the defendant, and does not require a reversal of the case.

There was no error in admitting the ice pick, revolver, and billy in evidence. They were sufficiently identified, and were admissible as a part of the history of the case. *State v. Gray,* 116 Iowa, 234; *State v. Tyler,* 122 Iowa, 125.

A witness for the defendant testified that he knew what his general moral character was and that it was good. On cross-examination he was asked if he knew that the defendant had been " running a joint," and that

> 5. EVIDENCE:
> general moral
> character.

he visited saloons and used liquor, and, further, whether he had ever " discussed the fact that he was an embezzler." The first and last of these questions were answered negatively, and, under the holding in *State v. Tippet,* 94 Iowa, 646, and *State v. McGee,* 81 Iowa, 17, the defendant was not prejudiced thereby. To the other questions the witness answered that he had seen the defendant in saloons, but not frequently, and that he used liquor sometimes, but not to excess. An occasional visit to a saloon or an occasional drink would not ordinarily seriously affect the general moral character of a man, either in the estimation of an ordinary community or in the estimation of a jury and, for these reasons, we do not think the testimony was prejudicial to the defendant. But aside from this, we think it was competent. The witness testified in chief that he knew the general moral character of the defendant, and that it was good. It is apparent from his entire testimony that this answer was based upon his acquaintance with the defendant, and that it was his personal estimate of his character, as distinguished from his reputed character. That the real character may be proven is held in *State v. Sterrett,* 68 Iowa, 76, and *State v. Cross,* 68 Iowa, 180. It is manifest that, when proof has been received as to the real character of the accused, it is competent to cross-

examine on the question, and any knowledge possessed by the witness which tends to discredit his estimate of such character is admissible. It is well settled, of course, that this line of cross-examination is not competent when the reputation is in question, rather than the, actual character. And such is the holding of the cases cited and relied upon by the appellant.

The eighth instruction is complained of. Therein was defined an accessory before the fact, and the court stated that, if certain facts were found proven, the jury should find the defendant guilty. The facts referred to were supported by evidence, and tended to show the defendant's participation in the crime, and, if true, there could be no doubt that he aided and abetted its commission. The instruction was therefore correct.

There was evidence tending to show flight after the crime was committed, and the court instructed thereon. The instruction announced the law applicable thereto. *State v. Seymour,* 94 Iowa, 699; *State v. Rodman,* 62 Iowa, 456; *State v. James,* 45 Iowa, 412. It is said, however, that the statement therein that flight is a circumstance which *prima facie* is indicative of guilt, in effect, told the jury that it was presumptive evidence of guilt, and was erroneous, under the holding in *State v. Poe,* 123 Iowa, 118. But such is not the case. "Indicative" means to give a suggestion of something, and *prima facie* means at first view, so that the expression means nothing more than that, at first view, flight suggests guilt; and it must be conceded, we think, that, if it is not a circumstance suggesting guilt, evidence thereof is not competent for any purpose. There is no merit in the other criticism made of the ninth instruction.

6. INSTRUCTIONS: flight.

The instruction on the question of the defendant's previous good character need not be set out here. It has been given by trial courts times without number, and has been again, and yet again, approved by this court, and is the

law governing the case.   *State v. House,* 108 Iowa, 69; *State v. Northrup,* 48 Iowa, 585.

We have given this case the consideration which its importance to the defendant and to the public demands, and find no error for which there should be a reversal.   The judgment.is therefore affirmed.— *Affirmed.*