Daniel D. WILLIAMSON and Morris C. Hurd, Plaintiffs,

v.

Hon. James P. KELLEY, Chief Judge of the Third Judicial District of the State of Iowa, Defendant.

No. 2–61589.

Supreme Court of Iowa.

Nov. 22, 1978.

Daniel D. Williamson and Morris C. Hurd, Ida Grove, pro se.

Richard F. Branco, Ida County Atty., for defendant.

Considered by REES, P. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

ALLBEE, Justice.

This is an original certiorari action in which two attorneys who practice in Ida County challenge certain orders of the Chief Judge of the Third Judicial District, of which Ida County is a part. Those orders provide that trials shall no longer be held in the Ida County courthouse, but shall instead be conducted in the basement of the post office at Ida Grove.

This is merely one phase of an ongoing dispute over the Ida County courthouse. The aspect with which we are concerned began on May 17, 1973 with a notice by the state fire marshal that the courthouse was deficient in eight specific respects. Of the eight, only one could be read as a criticism of the condition of the building's basic structure. The others went to finish work, such as wiring defects and the lack of certain safety hardware.

On August 10, 1976 the fire marshal wrote the county auditor, noting that no effort had been made to comply with the order issued 39 months earlier. Another such letter, which demanded compliance or vacation of the building, was sent on July 20, 1977. It was after this letter that the plaintiffs herein petitioned the fire marshal for review of his order. That petition was denied as untimely.

Later correspondence involving the board of supervisors, the fire marshal and the county attorney suggests that a compromise was reached. That compromise required that the third floor of the courthouse, on which the courtroom was located, be vacated by January 1, 1978.

On January 3, 1978 defendant judge entered an order that trials be held in the basement of the Ida Grove post office and that jury trials be held in a local church building. The order recited that the fire marshal had found the court facilities to be

unsafe, and that the board of supervisors had designated other suitable places for holding court.

On January 27 another order was entered, providing that jury trials should be in the post office basement. A third order was entered providing for publication of the second. The petition for writ of certiorari was subsequently filed with this court in a timely manner and a resistance was filed by the Ida County attorney. The writ issued on February 23, 1978. Defendant has not filed a brief with this court.

We have been provided with the transcript of a deposition taken of William J. Wagner in an action by the instant plaintiffs against the board of supervisors. Wagner was presented as an expert in architecture and renovation of historic buildings. The substance of his deposition testimony is that the courthouse is structurally sound and that it is of value both historically and architecturally. Wagner's testimony does not contradict the fire marshal's findings. Rather, the two opinions (Wagner's and the fire marshal's) go to two different subjects.

Plaintiffs also provide us, in their brief, with a description of the new courtroom in the post office basement. They describe it as a converted coal bin and claim that it is too small for jury trials. There is nothing in the sparse record from which they can draw this description.

Plaintiffs present five issues for our review. They first complain that defendant did not give adequate notice of his contemplated orders or hold hearings and take evidence on them and thus violated due process. They next challenge the fire marshal's conclusion that the courthouse was unsafe, and the court's reliance on that conclusion. The third contention is that the new places selected for holding court are not suitable for hearing criminal cases. The fourth issue is an expression of concern that the judge's orders might be raised as res judicata in another action, between plaintiffs and the board of supervisors. Finally, plaintiffs assert that federal policy, as established by the National Historic Preservation Act, 16 U.S.C.A. § 470, is violated by vacation of parts of the courthouse, which is on the National Register of Historic Places.

These issues have reached us in an unusual configuration. Ordinarily, such a dispute arises between the judiciary and a local governmental unit exercising legislative power. *See, e. g., Re Courtroom, etc., Circuit Court, Milwaukee County*, 148 Wis. 109, 134 N.W. 490 (1912); *cf. Webster County Board of Sup'rs v. Flattery*, 268 N.W.2d 869, 876–7 (Iowa 1978). Or, the question of the power of the court to hold court in a place other than the courthouse arises as an issue out of an underlying proceeding between private parties, *see Funk v. Carroll County*, 96 Iowa 158, 64 N.W. 768 (1895); *Moore v. Chicago, St. P. & K.C. Ry. Co.*, 93 Iowa 484, 61 N.W. 992 (1895); *Casey v. Stewart*, 60 Iowa 160, 14 N.W. 225 (1882), or an underlying criminal case. *See State v. Richards*, 126 Iowa 497, 102 N.W. 439 (1905); *State v. Shelledy*, 8 Iowa 477, 509–10 (1859); *Hampton v. United States*, Morris 489 (Iowa 1846).

■ We must, therefore, resolve the question of plaintiffs' standing before going on to any of their questions. The rule on public nuisances is applicable by analogy. In order for a private party to assert a claim, he must prove he has been injured in a special manner different from the public generally. *Ingram, Kennedy & Day v. Chicago, D. & M. Ry. Co.*, 38 Iowa 669, 675 (1874). *See also Indiana Alcoholic Beverage Comm'n v. McShane*, 354 N.E.2d 259, 266 (Ind.Ct.App.1976); *Saginaw Fire Fighters v. Police & Fire Dept.*, 71 Mich.App. 240, 243–5, 247 N.W.2d 365, 367–8 (1976); *Channel 10, Inc. v. Independent School Dist. No. 709*, 298 Minn. 306, 312, 215 N.W.2d 814, 820 (1974) ("Rights of a public nature are to be enforced by public authority rather than by individual citizens so as to avoid multiplicity of suits.").

The question becomes whether plaintiffs' status as attorneys who practice in the affected court gives them any special interest. That inquiry is answered by *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 567

(Iowa 1976). In *Critelli*, this court considered whether attorneys who represented criminal defendants in Polk County had standing to challenge local rules of procedure applying to criminal trials in that county. It was held that the attorneys had no right to raise the constitutional or statutory rights of others, the general class of people who make up their clients. The principle applies to this case as well, for, if an attorney has no standing to complain about a court rule under which he or she must operate, he or she certainly has no standing to complain about the courtroom in which he or she litigates. There are, or will be, persons who do have the required special individual interest. Civil litigants and criminal defendants both would have such an interest.

■ Thus, plaintiffs have no standing to raise any of their first three complaints. In the first two, they seek to raise the rights of the public generally, while in the third they attempt to make arguments on behalf of a general class in which they do not enjoy membership: criminal defendants tried in Ida County.

In the fourth division of their brief, plaintiffs attempt to attack the judge's orders because they might act as res judicata in the plaintiffs' suit against the county board of supervisors. Plaintiffs expressed some doubt at oral argument on just how these orders would operate as res judicata. Their doubts were well advised. The single authority cited in their brief, *Board of Sup'rs v. Chicago & N.W. Transp. Co.*, 260 N.W.2d 813, 815 (Iowa 1977), which deals with issue preclusion, recites as a requirement that the proceedings which are claimed to raise the res judicata bar must present a " 'full legal opportunity for an investigation and determination of the merits of the suit.' " But, plaintiffs themselves claim that there was no such opportunity here.

■ Further, privity or identity of parties is ordinarily required for a finding of res judicata. *Mauer v. Rohde*, 257 N.W.2d 489, 497 (Iowa 1977). These plaintiffs were not parties to any action out of which the order arose, nor did they have a "full and fair opportunity to litigate the . . . issue . . ." *Id.* Therefore, if plaintiffs' claims are factual, res judicata could not arise against them in the other suit as a result of these *ex parte* orders. Of course, the appropriate time for resolving this question is when it is raised in the proceeding involving the supervisors.

■ Finally, the plaintiffs claim that the judge's action violated the National Historic Preservation Act (NHPA), 16 U.S.C.A. § 470, *et seq.* Of course, that act imposes no duties on the states. *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971). It is basically a limitation on the expenditure of federal funds. And while plaintiffs' brief includes an indication that Ida County is receiving federal money through the Law Enforcement Assistance Administration, nothing in the record supports this allegation. Nor is there any suggestion that those federal funds are being used to effectuate the removal of the courtroom from the courthouse. Therefore, the NHPA has no bearing on this case, at least through the operation of 16 U.S.C.A. § 470f (Supp.1978). Further, nothing in the NHPA requires that a building on the National Register continue in its original use.

Because plaintiffs have no standing to raise any of the issues which the record would allow us to consider, we annul the writ.

WRIT ANNULLED.