Dwayne ALONS, Carmine Boal, Nancy Boettger, Danny Carroll, Betty De-Boef, Steve King, Neal Schuerer, Matthew Wentz and Church of Christ of Le Mars, Plaintiffs,

v.

IOWA DISTRICT COURT FOR WOODBURY COUNTY, Defendant.

No. 03–1982.

Supreme Court of Iowa.

June 17, 2005.

Kevin H. Theriot and Elizabeth Murray, Olathe, KS, for Alliance Defense Fund, and Timm W. Reid, Pleasant Hill, for Iowa Liberty and Justice Center, for plaintiffs.

Camilla B. Taylor, Chicago, IL, for amicus curiae Lambda Legal Defense and Education Fund, Sharon K. Malheiro of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for amicus curiae Lesbian, Gay, Bisexual and Transgendered Community Center of Central Iowa, Catherine Levine and Randall C. Wilson, Des Moines, for amicus curiae Iowa Civil Liberties Union, and John A. Knight, Chicago, IL, for amicus curiae American Civil Liberties Union Foundation.

LAVORATO, Chief Justice.

In this case, the district court entered a decree dissolving a Vermont civil union. The plaintiffs, who were not parties in the proceedings before the district court, have challenged that decree by filing an original certiorari proceeding in this court. The issue before us is not whether the district court was correct or incorrect in dissolving the Vermont civil union. Rather, the issue is whether these plaintiffs, as nonparties in the action before the district court, have a right to challenge the decree. We conclude they do not have such a right and for that reason we annul the writ of certiorari that we previously granted. Writ annulled.

## I. Background Facts and Proceedings.

On August 1, 2003, Kimberly Jean Brown filed a petition for dissolution of marriage in which Jennifer Sue Perez was named as the respondent. The petition alleged that the parties were married on March 25, 2002 in Bolton, Vermont and requested that the court enter a decree dissolving their marriage.

On November 14 the parties filed a stipulation regarding their assets and debts. On the same day, the district court entered a decree purporting to dissolve the parties' marriage and incorporating the stipulation as part of the decree.

On December 15 the plaintiffs filed with this court a petition for writ of certiorari naming as defendant, "Judge of the Iowa District Court for Woodbury County." See generally Iowa R.App. P. 6.301 (allowing the filing of a petition for writ of certiorari with the supreme court). The plaintiffs include state senators (Nancy Boettger and Neal Schuerer), state representatives (Dwayne Alons, Carmine Boal, Danny Carroll, and Betty DeBoef), a congressman (Steve King), a pastor (Matthew Wentz), and a church (Church of Christ of Le Mars).

The plaintiffs alleged that the district court did not have authority to enter a dissolution of marriage decree in the matter earlier mentioned. In support of this allegation, the plaintiffs alleged the following. Under Iowa law only a marriage between a male and female is valid and therefore Iowa law does not recognize a marriage between same-sex couples. The petitioner and respondent in the dissolution action were not married as alleged in the petition, but rather they entered into a civil union. Vermont law defines marriage as the legally recognized union of one man and one woman. The petitioner and respondent entered into a civil union. Under Vermont law a civil union requires that the parties be of the same sex and therefore excluded from the marriage laws of Vermont. There exists no statutory au-

thority for the district court to dissolve a civil union.

On December 24 the district court entered an amended decree. The court noted that the parties entered into a civil union under Vermont law. The court also noted that it did not have subject matter jurisdiction to grant a dissolution of marriage from a Vermont civil union under Iowa Code chapter 598. Invoking general equitable subject matter jurisdiction to declare the status and rights of the parties, the court vacated in part the decree of dissolution of marriage. The court then granted the following equitable relief: terminating the Vermont civil union, freeing the parties of any obligations incident to that union, declaring that the parties are single individuals with all rights of unmarried persons, and approving and incorporating into the amended decree those portions of the parties' stipulation regarding the division of property and debts.

On the same day, an order of this court asked the parties in this certiorari action to address what effect, if any, the amended decree had on the certiorari action. On January 9, 2004, the plaintiffs responded that the amended decree did not "repair the original jurisdictional infirmity" because equity jurisdiction did not grant the district court authority to recognize a civil union. The plaintiffs further maintained that the record contained no testimony, evidence, or allegation in the dissolution petition that a Vermont civil union actually existed. Finally, the plaintiffs stated that they were also relying on the Defense of Marriage Act found in 1 U.S.C. § 7 and 28 U.S.C. § 1738C (2003).

On February 3 we granted the petition for writ of certiorari and ordered the parties to brief the issue of the plaintiffs' standing to bring the certiorari action. On April 19 a number of entities filed a motion for permission to file an amicus brief on the issue of the plaintiffs' lack of standing. Those entities include the following: Lambda Legal Defense and Education Fund; Lesbian, Gay, Bisexual and Transgendered Community Center of Central Iowa; Iowa Civil Liberties Union; and American Civil Liberties Union Foundation [hereinafter amicus]. On May 19 we granted that motion.

## II. Issue.

The decisive issue is whether the plaintiffs have standing to seek a writ of certiorari challenging the district court's amended decree.

## III. Scope of Review.

■■■ "In an original certiorari proceeding, our review is for errors at law." *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 488 (Iowa 2003). The principles for reviewing a certiorari action have been recently stated as follows:

> "A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise has acted illegally. For this reason, this court 'may examine only the jurisdiction of the district court and the legality of its actions.' 'Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law.'"

*Pfister v. Iowa Dist. Ct.*, 688 N.W.2d 790, 794 (Iowa 2004) (citations omitted).

## IV. Standing.

■■■ **A. Applicable Iowa law.** In *Citizens for Responsible Choices v. City of Shenandoah,* we said that standing to sue means " 'a party must have "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that con-

troversy." ' " 686 N.W.2d 470, 475 (Iowa 2004) (citations omitted); *accord Sanchez v. State,* 692 N.W.2d 812, 821 (Iowa 2005). As far as Iowa law is concerned, this means "that a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Id.* Having a legal interest in the litigation and being injuriously affected are separate requirements for standing. *Id.*

Standing is a doctrine courts employ to

> refuse to determine the merits of a legal controversy irrespective of its correctness, where the party advancing it is not properly situated to prosecute the action. When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.

59 Am. Jur. 2d *Parties* § 36, at 442 (2002) (footnotes omitted); *see also Hawkeye Bancorporation v. Iowa Coll. Aid Comm'n,* 360 N.W.2d 798, 802 (Iowa 1985) ("standing is a self-imposed rule of restraint").

In short, the focus is on the party, not on the claim. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531, at 339 (1984) [hereinafter Wright]. Even if the claim could be meritorious, the court will not hear the claim if the party bringing it lacks standing. *See Citizens,* 686 N.W.2d at 475 ("Whether litigants have standing does not depend on the legal merit of their claims, but rather whether, if the wrong alleged produces a legally cognizable injury, they are among those who have sustained it.").

It has been said that "[s]tanding is related to the doctrine that prohibits advisory opinions because the latter requires the court to dispose of only those issues that affect the rights of the parties present." 59 Am. Jur. 2d *Parties* § 35, at 441 (2002).

This court has required standing in certiorari actions. In *State v. West,* the court stated the requirement this way:

> Certiorari, which is an extraordinary remedy, is available to all persons who show a substantial interest in the activity challenged. Generally, only a party to an action may obtain the writ. An exception exists, however, when the public is concerned with the subject matter of the action, in which case anyone interested may petition. In order for persons who are not parties to assert a claim, they must prove that they have been injured in a special manner, different from that of the public generally.

320 N.W.2d 570, 573 (Iowa 1982) (citations omitted); *accord Williamson v. Kelley,* 271 N.W.2d 727, 729 (Iowa 1978); *Hohl v. Bd. of Educ.,* 250 Iowa 502, 509, 94 N.W.2d 787, 791 (1959); *Keely v. Bd. of Supervisors,* 158 Iowa 205, 207–08, 139 N.W. 473, 474 (1913); 59 Am. Jur. 2d *Parties* § 40, at 446–47 (2002).

According to the general rule for standing, the plaintiffs here—being nonparties—lack standing to bring this certiorari action. The question remains whether they satisfy the public interest exception as stated in *West.* Therefore, to fall within this exception, the plaintiffs must first prove that they are "concerned with the subject matter of the action." *West,* 320 N.W.2d at 573. That means the plaintiffs must have a "specific personal or legal interest in the litigation," which relates to the first requirement of standing generally. *Citizens,* 686 N.W.2d at 475. In addition, as mentioned, the plaintiffs must also prove that "they have been injured in a

special manner, different from that of the public generally," which relates to the second requirement of standing generally. *West*, 320 N.W.2d at 573.

Several of our cases illustrate the type of interest and injury required in a certiorari action, which, as mentioned, are not dissimilar from the type of interest and injury required for standing generally. In *Polk County v. District Court*, a case addressing many of the issues in the present case, Polk County and several residents brought a certiorari action to determine the legality of a district court order declaring jury lists of Polk County illegal. 133 Iowa 710, 110 N.W. 1054 (1907). The issues of concern in *Polk County* were (1) whether the plaintiffs had such a legal interest in the controversy to entitle them to maintain the action and (2) whether the plaintiffs showed that they had a specific right that was violated. *Id.* at 711, 110 N.W. at 1054.

The individuals maintained they were citizens and taxpayers of the county and therefore entitled to maintain the action. *Id.* The court rejected the citizenship claim, stating that "mere citizenship confers no right to maintain the action." *Id.*; *accord* 13 Wright, *Federal Practice and Procedure* § 3531.3, at 411 ("General citizen standing to vindicate the interest in lawful government is rejected, even though there be important issues and able—even fervent—litigants.").

The court also rejected the taxpayer claim, holding that "*certiorari* will not lie to review the action of a court when such action involves only the expense necessary to the maintenance of the courts and the due administration of the law." *Polk County*, 133 Iowa at 712, 110 N.W. at 1055. The court cited the well-established rule that "a taxpayer may maintain an action in his own name to prevent unlawful acts by public officers which would 'increase the amount of taxes he is required to pay, or

diminish a fund to which he has contributed.'" *Id.* (citation omitted).

Although the individual plaintiffs in *Polk County* had suits pending that were triable to a jury, the court suggested that the only way the plaintiffs could challenge the order was if their case were called for trial and they were not able to have their case tried. *Id.* at 713, 110 N.W. at 1055. Under the circumstances, the court said,

> the plaintiffs had suffered no injury at the time they filed their pleadings and asked to have the order set aside. They were simply anticipating some wrong or injury, and a writ of *certiorari* will never issue in such cases.

*Id.* at 713–14, 110 N.W. at 1055.

Finally, the court noted that the plaintiffs were attempting to represent the general public rather than their individual interest and demonstrated no authority for doing so. *Id.* at 714, 110 N.W. at 1055.

One year later, this court decided *Hemmer v. Bonson*, 139 Iowa 210, 117 N.W. 257 (1908), a case upon which the plaintiffs heavily rely. However, for reasons that follow, we think this reliance is misplaced.

In *Hemmer*, the court made the following broad statement:

> If the petitioner for the writ is a party in substance, though not in form, he may have the writ. So, also, if the matter to be reviewed is one which affects the public generally, an individual citizen may ordinarily invoke the remedy of *certiorari*.

139 Iowa at 215, 117 N.W. at 259. The facts of the case and the actual holding belie the statement's broadness. In *Hemmer*, a statute expressly gave any citizen in the county the right to enjoin a liquor nuisance existing in the county. *Id.* A citizen brought such an action, and the district court entered a decree enjoining a tavern from maintaining the nuisance upon

certain conditions. *Id.* at 212–13, 117 N.W. at 257–58. Another citizen of the county, whose residence was next to the saloon, brought a certiorari action challenging the decree as not going far enough under the statute. *Id.* at 214, 117 N.W. at 258. The court noted that while the injunction proceeding was brought in the name of an individual citizen, the plaintiff acted in a representative capacity only and any decree rendered was primarily for the protection of the public interest. *Id.* at 215, 117 N.W. at 259. Because the plaintiff bringing the certiorari action could have sued under the statute to enjoin the nuisance and because the plaintiff had a special interest in the matter due to the proximity of her residence to the tavern, this court held that the plaintiff had standing. *Id.* at 215–17, 117 N.W. at 259.

In *Keely,* the plaintiff, a citizen of Iowa, resident of Dubuque County, and an honorably discharged Union soldier, sought certiorari review of a board of supervisors' decision appointing commission members to a commission in charge of dispensing funds to families of indigent, honorably discharged Union soldiers to cover the soldiers' funeral expenses. 158 Iowa at 206, 139 N.W. at 474. Although the statute required the commission members to be Union soldiers, one of the appointees did not meet this qualification. *Id.* The certiorari action was filed to challenge this appointment. *Id.*

Holding that certiorari did not lie to challenge the board's decision, this court in *Keely* noted that although the board did not follow the statute, the plaintiff neither alleged that he was directly interested in the board's action nor that he was prejudiced by it. *Id.* at 207, 139 N.W. at 474. In support of its conclusion, the court stated that

[t]he writ of certiorari is not available to an individual who has no direct or particular interest in the proceedings sought to be reviewed, and who does not show that he will suffer a special injury beyond that which will affect him in common with the public. . . .

*Id.*

In *Hohl,* this court recognized the general rule that only a person who is a party to the action involved may secure the writ of certiorari. 250 Iowa at 509, 94 N.W.2d at 791. The court then stated the exception: "Where the public is concerned in the subject matter, anyone interested may apply." *Id.* (citing *Hemmer,* 139 Iowa 210, 117 N.W. 257). Applying the exception, the court held that residents in and landowners of an area of land subject to a school district reorganization had standing to challenge the reorganization decision by a state agency. 250 Iowa at 503–04, 94 N.W.2d at 788. The plaintiffs in *Hohl* were *directly* affected by the reorganization decision because their land was subject to that decision. *Id.* at 504, 94 N.W.2d at 788. So they had a specific personal interest in the litigation.

Later, in *Board of Directors v. Board of Education,* this court expressly referred to *Hohl.* 251 Iowa 929, 936, 103 N.W.2d 696, 701 (1960). In doing so, the court recognized that whether a party appeals or brings a certiorari action, such party "must have an interest legally recognizable" in the underlying case. *Id.* This court then held that a school district that had no territory included within a proposed reorganization of two other school districts had no right to participate in an appeal challenging the proposed reorganization. *Id.* at 931–32, 936–37, 103 N.W.2d at 698, 701.

The public interest exception was again before this court in *Williamson v. Kelley,* 271 N.W.2d at 729–30. In that case, two practicing attorneys brought a certiorari action challenging district court orders

that provided trials would no longer be held in the courthouse because of a fire hazard but would be held in the post office basement. *Id.* at 728–29. The question was whether the plaintiffs' status as attorneys who practiced in the affected court gave them any special interest that would meet the standing requirement. *Id.* at 729. The attorneys argued that (1) there was inadequate notice and lack of hearings prior to the orders being entered, (2) the fire marshal's conclusion that the courthouse was unsafe was incorrect, and (3) the post office basement was not a suitable place to hear criminal cases. *Id.* This court held that the attorneys had no special interest to challenge the orders on those grounds. *Id.* at 730. As to the first two grounds, the court held the attorneys were raising rights of the public generally, while as to the third ground they were raising arguments on behalf of a general class in which they did not enjoy membership—criminal defendants tried in the county. *Id.*

In *State v. West,* the issue again involved the public interest exception, and the issue narrowed to whether the nonparty appellants had been injured in a special way, different from that of the public generally. 320 N.W.2d at 573. The appellants claimed to have been victims of the criminal defendant, West, and that they had suffered pecuniary damages because of his action. *Id.* They sought review of a district court decision excluding them from receiving distributions from the defendant's restitution fund. *Id.* Even though the appellants were not identified as victims in the restitution plan that became part of the sentencing order, they did have a substantial personal interest in the outcome and would suffer pecuniary injury without their involvement in the restitution plan. *Id.* at 572, 573. The court therefore found the appellants had standing to challenge the district court decision. *Id.* at 573.

**B. Relevant federal law.**
Article III of the Federal Constitution defines and limits the jurisdiction of the federal courts. *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947, 958 (1968). The federal courts' judicial power is constitutionally restricted under this provision to "cases" and "controversies." *Id.* The words "cases" and "controversies"

> limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Id.* at 95, 88 S.Ct. at 1950, 20 L.Ed.2d at 958–59.

Justiciability is a concept that covers a number of areas in which questions sought to be adjudicated have been held not to be justiciable. *Id.* at 95, 88 S.Ct. at 1950, 20 L.Ed.2d at 959. Examples include political questions, advisory opinions, issues that are moot, and lack of standing. *Id.*

In *Lujan v. Defenders of Wildlife,* the United States Supreme Court noted its cases over the years "have established that the irreducible constitutional minimum of standing contains" the following three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or

imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) (alterations in original) (citations omitted) (footnote omitted). Recently, we cited this test with approval regarding a standing issue in *Sanchez v. State,* 692 N.W.2d at 821.

 As is peculiar to the doctrine of standing, the Supreme Court recognizes that the "fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast,* 392 U.S. at 99, 88 S.Ct. at 1952, 20 L.Ed.2d at 961. So "in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Id.* at 101, 88 S.Ct. at 1953, 20 L.Ed.2d at 962. For that reason, the "emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests.'" *Id.* (citations omitted).

 By "particularized" in the three-part constitutional test for standing articulated in *Lujan,* the Court means that the "injury must affect the plaintiff in a personal and individual way." *Lujan,* 504

U.S. at 560 n. 1, 112 S.Ct. at 2136 n. 1, 119 L.Ed.2d at 364 n. 1. In defining the nature of the injury, the Court has made it plain that "[a]bstract injury is not enough." *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682 (1974). And allowing a plaintiff who has suffered no injury in fact to require a court to rule on issues in the abstract "would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'" *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 222, 94 S.Ct. 2925, 2932–33, 41 L.Ed.2d 706, 719 (1974).

The injury-in-fact limitation

reflects a due regard for the autonomy of those persons likely to be most directly affected by a judicial order. The federal courts have abjured appeals to their authority which would convert the judicial process into "no more than a vehicle for the vindication of the value interests of concerned bystanders."

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700, 709 (1982) (citation omitted).

 Beyond the constitutional requirements for standing, the United States Supreme Court has also considered several "prudential considerations," further limiting the doctrine of standing. *Id.* at 471, 102 S.Ct. at 758, 70 L.Ed.2d at 708–09. One such consideration requires that "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975). Thus,

a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not [provide a basis for standing].

*Lujan,* 504 U.S. at 573–74, 112 S.Ct. at 2143, 119 L.Ed.2d at 372. The claimed nonobservance of the law, "standing alone," affects only the generalized interest of all citizens, and such an injury is abstract in nature, which is not sufficient for standing. *Schlesinger,* 418 U.S. at 217, 94 S.Ct. at 2930, 41 L.Ed.2d at 716; *see also Valley Forge,* 454 U.S. at 482–83, 102 S.Ct. at 764, 70 L.Ed.2d at 716 ("This Court repeatedly has rejected claims of standing predicated on 'the right, possessed by every citizen, to require that the Government be administered according to law....'" (Citations omitted.)); *Schlesinger,* 418 U.S. at 227, 94 S.Ct. at 2935, 41 L.Ed.2d at 722 ("The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries.").

 It is true that the federal test for standing is based in part upon constitutional strictures and prudential considerations while our rule on standing is self-imposed. *Hawkeye Bancorporation,* 360 N.W.2d at 802; *see also* 59 Am. Jur. 2d *Parties* § 36, at 441 (2002). Nevertheless, the federal test for standing is not dissimilar from our own test as we have distilled from the decisions we have discussed. We therefore consider the federal authority persuasive on the standing issue.

**C. Analysis.** With the foregoing principles in mind, we address the various grounds the plaintiffs urge in support of their contention that they have standing.

**1. Standing as members of the public.** The plaintiffs first contend that they have standing because the public, as represented by the plaintiffs, has an interest in promoting traditional marriage. They argue that the district court's recognition of a civil union is detrimental to the furtherance and promotion of marriage as defined in Iowa.

The plaintiffs next contend that the public has an interest in avoiding the erosion of marriage. In support of this contention, the plaintiffs argue that treating same-sex relationships the same as marriage denigrates and undermines traditional, opposite-sex marriage. Further, they say,

[t]he Iowa public has an interest in preserving the integrity of the marital union by making opposite-sex marriage the exclusive form of family relationship endorsed by the government. Loss of this exclusive endorsement will de-emphasize the importance of traditional opposite-sex marriage to society, weakening this vital institution, and placing our entire democratic system in jeopardy by eroding its foundation.

The plaintiffs also contend that the public has an interest in safeguarding the rule of law and an interest in seeing that judges act within the jurisdictional boundaries established by Iowa law. They maintain that the district court was outside its jurisdiction when it dissolved the civil union in this case.

Finally, the plaintiffs contend the public has an interest in preserving the judicial process. That process, they argue, has been circumvented because Brown and Perez have no interest in challenging the district court's jurisdiction to dissolve their civil union. Therefore, they conclude, injustice will result unless the public can petition for a writ of certiorari to challenge the district court's actions.

■ We must keep in mind that our task is not to judge the merits of the plaintiffs' contentions. Rather, our task is to determine whether these plaintiffs are the proper parties to bring the action. Reduced to their simplest form, the plaintiffs' contentions and arguments do no more than to assert a right to represent the general public rather than to identify their individual interests. They therefore have not shown that they have a specific personal or legal interest in the underlying action. Nor have the plaintiffs shown that they have been injured in a special manner, different from that of the public generally. *See West,* 320 N.W.2d at 573. Rather, what the plaintiffs allege is an injury in the abstract, not in fact, which is not enough. *See Schlesinger,* 418 U.S. at 220–21, 94 S.Ct. at 2932, 41 L.Ed.2d at 718–19; *see also Korioth v. Briscoe,* 523 F.2d 1271, 1276 (5th Cir.1975) ("It is tautologically clear that a citizen who asserts only his citizen status as a basis for standing to pursue constitutional or statutory claims has not specified any injury which sets him apart from the mass of citizens who desire that the state adhere to the legal amenities of governance."). Moreover, the injury the plaintiffs claim is anticipatory, which, as we have said, is not sufficient for standing. *See Polk County,* 133 Iowa at 713–14, 110 N.W. at 1055.

The plaintiffs' contention and argument regarding preserving the judicial process seem to imply that the issue regarding dissolution of civil unions will never be before this court because the parties will never appeal. The faulty premise in this assumption is that district court judges when confronted with this issue in the future will *always* dissolve the union. In those cases in which a district court judge denies such relief, the more probable scenario is that one of the litigants will appeal. Answering a similar argument, the court in *Schlesinger* appropriately noted:

Closely linked to the [plaintiffs'] idea that generalized citizen interest is a sufficient basis for standing was the District Court's observation that it was not irrelevant that if respondents could not obtain judicial review of petitioners' action, "then as a practical matter no one can." Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing.

418 U.S. at 227, 94 S.Ct. at 2935, 41 L.Ed.2d at 722 (holding that plaintiffs lacked standing as citizens to sue because claim implicated only generalized interest of all citizens).

■ **2. Plaintiffs' standing in their individual capacities as married persons.** Several of the plaintiffs contend that they have standing in their capacity as married persons. To support this contention, these plaintiffs argue that as individuals they have a substantial interest in the promotion of traditional marriage in this state. They point out that under Iowa law married individuals receive certain rights and privileges not granted to others. Further, they argue, by recognizing a civil union, the district court has injured them because such recognition would dilute the value of traditional marriage long recognized by this state.

We fail to see how the district court's action in dissolving a civil union of another couple harmed in any specific way these plaintiffs' marriages, and for this reason they have shown no legally recognized interest or personal stake in the underlying action. The district court's action in terminating another couple's civil union did not injure these plaintiffs in a special manner, different from the public generally. Nor was such action an injury in fact as

distinguished from an abstract injury. In addition, any injury to the interest these plaintiffs claim is anticipatory and therefore not sufficient for standing.

■ **3. Plaintiffs' standing in their individual capacities as taxpayers.** Several of the plaintiffs also contend that they have standing as taxpayers in this state. Their argument is that by granting the decree

> the district court opened up the judicial system to a new class of petitioners and respondents outside those individuals provided for under state law, which will require the provision and expenditure of additional state judicial resources beyond those approved by the state legislature. Dissolution/termination of a Civil Union will likely result in additional litigation, requiring state judicial resources, concerning property distribution, child custody and support, and spousal benefits.

These allegations are akin to the complaint of the increased cost of the administration of justice generally in *Polk County v. District Court.* Rejecting that as a ground for standing, this court said:

> Conceding, for the purposes of this case, that the plaintiffs, as taxpayers, may be affected financially because of the conditions pleaded, we are of the opinion that they cannot maintain this action on account thereof. The courts are not ordinarily the dispensers of public funds, and have no control over such funds save as an incident to the expeditious and proper conduct of the business before them, and then only by direction to the proper authorities charged with the disbursing of such funds. In the case before us, no order has been made that will either increase or diminish any fund to which any of the plaintiffs have already or to which they may in the future contribute, except as such fund may be affected incidentally by the future administration of the law, and it is manifest that a taxpayer may not control judicial action because such action involves indirectly and incidentally the expenditure of public funds to which he has contributed, or to which he may in the future contribute. If such a rule were to be established, every taxpayer in the State might by *certiorari* or other proceedings question the jurisdiction of the courts whenever judicial proceedings involved an expenditure of public funds, as such proceedings always do. It is clear that *certiorari* will not lie to review the action of a court when such action involves only the expense necessary to the maintenance of the courts and the due administration of the law.

*Polk County,* 133 Iowa at 712, 110 N.W. at 1054–55. We think this reasoning is applicable here. In this case, we have no order increasing or diminishing any fund to which these plaintiffs have contributed or will contribute in the future. Rather, what we have are allegations that more judicial resources will be needed to administer the court system. Such allegations are not sufficient to constitute standing.

■ **4. Plaintiff Wentz's standing in his individual capacity as a pastor.** The contention here is that the plaintiff Matthew Wentz, pastor of the Church of Christ of Le Mars, has standing in his individual capacity as a pastor, who has solemnized marriages and counseled married people. This plaintiff claims that he faces possible criminal charges pursuant to Iowa Code section 595.9 (2003) if he solemnizes a marriage of a heterosexual couple when one of the parties has entered into a civil union that has not been terminated.

Iowa Code section 595.3 provides that "[p]revious to the solemnization of any marriage, a license for that purpose must be obtained from the county registrar."

Section 595.3 prohibits the county registrar from issuing a marriage license when (1) either party is under the age necessary to render the marriage valid, (2) either party is less than eighteen years of age unless the marriage is approved by the district court, (3) either party is disqualified from making any civil contract, (4) the parties are within the degrees of consanguinity or affinity in which marriages are prohibited by law, and (5) either party is a ward under a guardianship and the court has made a finding that the ward lacks the capacity to contract a valid marriage. Iowa Code section 595.9 provides that "[i]f a marriage is solemnized without procuring a license, the parties married, and all persons aiding them, are guilty of a simple misdemeanor." Therefore, once a couple presents a marriage license to a minister, it seems clear to us that the minister may solemnize the marriage without fear of criminal sanctions provided in Iowa Code section 595.9.

Moreover, this plaintiff is under no duty to solemnize any marriage. If this plaintiff is in doubt about the validity of such a proposed marital union, he can simply refuse to solemnize the marriage.

In addition, this plaintiff has failed to show he has a legally recognized interest or personal stake in the underlying case. And he has failed to show the required injury sufficient to confer standing. As mentioned, "simply anticipating some wrong or injury" is not enough for standing. *Polk County,* 133 Iowa at 713–14, 110 N.W. at 1055; *accord Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364; *Keely,* 158 Iowa at 208, 139 N.W. at 475.

■ **5. Plaintiff Church of Christ of Le Mars's standing in its individual capacity as a church.** The Church of Christ of Le Mars claims it has standing for several reasons. First, this plaintiff has a substantial interest in upholding and pre-serving traditional marriage, as defined by Iowa law, within the community that it serves. Second, many Iowa citizens look to this plaintiff for guidance as to marriage, family, and divorce. The decree in this case impacts these relationships. Last, this plaintiff has an interest in preserving the traditional marital relationships in its community. The decree, which is contrary to well-established law, public policy, and ecclesiastical principles of the plaintiff's denomination, would undermine the denomination's teachings concerning marriage.

All of these arguments fail to demonstrate that this plaintiff has any legally recognized or personal stake in the underlying case. Moreover, this plaintiff has failed to show that it has been injured in a special manner, different from that of the public generally. These arguments also fail to show how this plaintiff has been injured in fact as distinguished from being injured in an abstract manner. Finally, any injury to the interest alleged by this plaintiff is anticipatory and therefore not sufficient for standing.

■ **6. Plaintiffs' standing in their individual capacities as state and federal legislators.** The plaintiffs who are state legislators claim they have standing in their individual capacity as such legislators. Some of them are or have been active in the Iowa Legislature since or prior to April 1998, when Iowa Code section 595.2(1) was amended to define marriage as valid "[o]nly ... between a male and a female." One of the plaintiffs is a congressman, who claims he has standing in his individual capacity as a congressman.

The plaintiff state legislators contend they have standing because they have an interest, as legislators, in seeing that the "law passed to preserve traditional mar-

riage" is properly enforced. The plaintiff congressman contends he has standing because he has an interest in seeing that federal laws governing marriage are likewise enforced.

The plaintiff state legislators argue that they "have suffered a peculiar injury in that the court usurped the power 'properly belonging' to the legislature" by improperly taking jurisdiction of the underlying case and recognizing a civil union that is not recognized under Iowa law.

The plaintiff congressman argues he has suffered a peculiar injury by the district court's recognition of the civil union because that action was not required under federal law and not permitted by state law.

All of these contentions and arguments have no bearing on what the district court actually did. The court dissolved a civil union; it did not dissolve a marriage. We therefore agree with the amicus that these plaintiffs have claimed an interest in Iowa and federal marriage laws that has nothing to do with the district court's decision.

■ Moreover, judges determine what the existing law is in relation to some existing thing already done; whereas legislators make " 'a predetermination of what the law shall be for the regulation of future cases falling under its provisions.' " *In re D.C.V.*, 569 N.W.2d 489, 496–97 (Iowa 1997) (citations omitted). Here the district court was doing what judges do: interpreting the law concerning a case over which it had jurisdiction. Its decision may have been correct or it may have been incorrect. We make no judgment on the merits. But we disagree with the plaintiff state legislators' contention that the district court was usurping their power.

■ It would be strange indeed and contrary to our notions of separation of powers if we were to recognize that legislators have standing to intervene in law-

suits just because they disagree with a court's interpretation of a statute. Generally, "in the absence of statutory directive, a legislator may sue only to challenge misconduct or illegality in the legislative process itself." *Nania v. Borges,* 41 Conn. Supp. 90, 551 A.2d 781, 785 (1988); *see also Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (legislators who, by virtue of tie-breaking vote cast by lieutenant governor, were on losing side, were allowed to challenge legality of vote); *Korioth,* 523 F.2d at 1277–78 (state legislator challenging the constitutionality of a state statute establishing a regional planning scheme did not have standing, by virtue of the legislator's capacity as legislator, to bring the action, when neither the statute itself nor its implementation impeded the legislator's legislative power); *cf. Raines v. Byrd,* 521 U.S. 811, 816, 829–30, 117 S.Ct. 2312, 2316, 2322–23, 138 L.Ed.2d 849, 856, 864 (1997) (congressmen who voted against the Line Item Veto Act brought suit alleging the newly enacted Act was an unconstitutional expansion of presidential power that infringed upon the legislative branch's power; the Court held the congressmen lacked standing because they "alleged no injury to themselves as individuals, the institutional injury they allege is wholly abstract and widely dispersed, and their attempt to litigate this dispute at this time and in this form is contrary to historical experience" (citations omitted)). If the legislature disagrees with a court's interpretation, its prerogative is to pass legislation making it clear that the court's interpretation of their intention was incorrect. In the past, the legislature has shown no hesitancy in doing just that.

■ Moreover, these plaintiffs have not shown that they have a legally recognized or personal stake in the underlying case. Nor have they shown that they have

been injured in fact as distinguished from having been injured in an abstract manner. As mentioned, when the only claim is nonobservance of the law, such claim affects only the generalized interest of all citizens. Any injury resulting from such nonobservance is abstract in nature and not sufficient for standing. *See Raines,* 521 U.S. at 816, 829–30, 117 S.Ct. at 2316, 2322–23, 138 L.Ed.2d at 856, 864; *Valley Forge,* 454 U.S. at 482–83, 102 S.Ct. at 764, 70 L.Ed.2d at 716; *Schlesinger,* 418 U.S. at 217, 226–27, 94 S.Ct. at 2930, 2935, 41 L.Ed.2d at 716, 722.

Finally, we agree with the amicus's observation that

> [m]any people have strong opinions about marriage, as they do about divorce, child custody, zoning, and many other issues, but if everyone were allowed to petition for certiorari simply because of ideological objections or strongly held philosophical beliefs that an order should not have been entered,

then there would be no limits to the petitions brought. Iowa law has never permitted such unwarranted interference in other peoples' cases. Simply having an opinion does not suffice for standing.

## V. Disposition.

Because the plaintiffs have shown no standing to challenge the district court's amended decree, we annul the writ. We have carefully considered all of the contentions and arguments of the parties. Those we have not addressed either lack merit or were not properly raised for our review.

**WRIT ANNULLED.**