# IN THE COURT OF APPEALS OF IOWA

No. 16-0301
Filed March 22, 2017

**JOHN JOSEPH FILIPELLI,**
        Petitioner-Appellant,

vs.

**IOWA RACING AND GAMING COMMISSION,**
        Respondent-Appellee,

and

**IOWA GREYHOUND ASSOCIATION,**
        Intervenor.
_____

Appeal from the Iowa District Court for Pottawattamie County, James S. Heckerman, Judge.

John Filipelli appeals the district court's finding he lacked standing to challenge the Iowa Racing and Gaming Commission's action regarding the distribution of an escrow account created by an arbitration agreement. **AFFIRMED.**

Kyle J. McGinn of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and David M. Ranscht and Jeffrey C. Peterzalek, Assistant Attorneys General, for appellee.

Nicholas J. Mauro of Crawford & Mauro Law Firm, Des Moines, for intervenor.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

John Filipelli appeals the district court's grant of the Iowa Racing and Gaming Commission (IRGC) and Intervenor Iowa Greyhound Association's (IGA) joint motion to dismiss. Filipelli argues the court erred in determining he lacked standing to challenge the IRGC's action concerning the distribution of an escrow fund created by an arbitration agreement. We affirm.

### I. Background Facts and Proceedings

The Iowa Legislature created the IRGC to have regulatory jurisdiction over all gambling operations governed by Iowa Code chapters 99D (2015) (pari-mutuel racing) and 99F (gambling structures). The Iowa West Racing Association (IWRA) is a nonprofit organization that held a pari-mutuel license to conduct gambling at the Horseshoe/Bluffs Run Casino in Council Bluffs. Prior to 2014, Iowa law required the casino to conduct live greyhound racing and to contribute to the purses for these races from its slot machine revenue. The IWRA and the IGA, a nonprofit corporation organized to promote the breeding and racing of greyhounds in Iowa for sport, were required by law to reach an agreement as to the amount of slot machine revenues that should be used to supplement purses at the racetrack each year. The IWRA and the IGA frequently failed to reach an agreement, and as a result, they often submitted the matter to binding arbitration.

In 1995, the IWRA and the IGA failed to reach an agreement regarding the amount the casino would contribute to supplement purses at Bluffs Run in 1996 and submitted the matter to an arbitration panel. The panel issued a decision and award setting the 1996 purse supplement at four million dollars. The panel

also established an escrow account comprised of an additional four million dollars contributed from slot machine revenue at the casino to be used to supplement purses in future years as a result of the casino's underpayment of purses in previous years due to underestimated adjusted gross receipts as projected by the IWRA. The escrow fund was held in the name of the IGA and the IWRA, and the IGA maintained exclusive control regarding its investment. In 1998, an arbitration panel suspended contributions to the escrow account after the IWRA and the IGA failed to develop a specific plan for the funds in the account.

In 2014, the Iowa Legislature discontinued live greyhound racing at the casino, effective in December 2015. *See* Iowa Code § 99D.9A. The legislature provided the IGA the opportunity to obtain a pari-mutuel license and operate its own live greyhound racing in Dubuque. *See* Iowa Code §§ 99D.9B, .9C. The IGA subsequently applied for and received such a license and began racing.

The IGA and the IWRA attempted to negotiate an agreement for the disbursement of the funds in the escrow account. They were unable to agree on how to distribute the funds and submitted the matter to the IRGC for consideration. On March 5, 2015, the IRGC moved to distribute the escrow fund: "[O]ne-half [(roughly 2.6 million dollars)] for purses at Bluffs Run based upon the past five years, 2011–2015, and one-half . . . to the [IGA] to be used for purses in the operation of the Dubuque track." The IRGC approved the motion with four "yes" votes and one "no" vote. Neither the IWRA nor the IGA challenged the IRGC's decision.

On October 27, 2015, Filipelli, a licensed dog breeder and kennel owner-operator who began participating in racing at Bluffs Run in 2010, filed a petition for judicial review of the IRGC's March 5 action, pursuant to Iowa Code chapter 17A.19, claiming the decision was contrary to Iowa law and the prior arbitration awards. In his petition, Filipelli alleged he had standing to challenge the IRGC's action because (1) "[h]e ha[d] a personal interest in the illegal transfer of funds out of the Purse Escrow account," (2) "[t]he illegal transfer of 2.6 million dollars has a direct adverse effect on [him] in the loss of funds in excess of $60,000.00," (3) "[t]he actions of the [IRGC] in allowing the transfer of the funds contrary to statute directly caused the injury to [him]," and (4) "this issue is more likely than not to be redressed by a favorable decision for [him]." Filipelli requested the court enter "an order that the purse escrow funds be paid only to the authorized recipients who were operating on the date of cessation of racing at the Bluffs Run Track."

On November 30, the IRGC filed a pre-answer motion to dismiss Filipelli's petition, arguing Filipelli did not have proper standing to challenge the IRGC's action. On December 1, the IGA petitioned for leave to intervene and participate as a party to this matter and join in the IRGC's motion to dismiss.[1]

On January 25, 2016, the district court granted the IRGC and IGA's joint motion to dismiss based on Filipelli's lack of standing. The court concluded Filipelli had no specific personal or legal interest in the prior arbitration awards

---

[1] In its joinder, the IGA alternatively claimed Filipelli's petition should be dismissed for failure to state a claim upon which relief may be granted. Because the district court dismissed Filipelli's petition on the jurisdictional issue of standing, it did not rule on this claim.

that established the escrow account because he was never a party to those proceedings. The court also determined that even if Filipelli had an interest, he had not shown that any interest had been adversely affected. Further, the court noted the dispute arose because the IWRA and the IGA were unable to reach an agreement regarding the disbursement of the funds in the account, not because of any action taken by the IRGC in resolving the disputed issues between the parties. The court noted none of the arbitration proceedings involved Filipelli, who began racing in Iowa fifteen years after the escrow account was created. The court further dismissed Filipelli's claim that Iowa Code section 99D.9A(6) specifically provides the entirety of the funds in the escrow account should be distributed to kennel owners who raced dogs at the casino, concluding "[t]he only reference to the escrow fund within the new sections of the code enacted in 2014 is for the explicit purpose of providing both the IGA and IWRA with immunity from any claims arising from distributions made or not made from the escrow fund." The court determined that section "merely identifies the parties and the funds, and implicates the immunity the parties enjoy with respect to the distribution of the funds so identified."

Filipelli appeals.

## II.    Standard of Review

"We review a decision by the district court to dismiss a case based on the lack of standing for errors at law." *Godfrey v. State*, 752 N.W.2d 413, 417 (Iowa 2008); *see also* Iowa Code § 17A.20 (allowing appellate review of a final judgment of the district court in an action for judicial review of an agency decision). "When reviewing a motion to dismiss, we accept the facts alleged in

the petition as true." *Hawkeye Foodserv. Distrib., Inc. v. Iowa Educs. Corp.*, 812 N.W.2d 600, 604 (Iowa 2012). "Dismissal is proper 'only if the petition shows no right of recovery under any state of facts.'" *Id.* (quoting *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 194 (Iowa 2007)).

### III. Analysis

Filipelli claims the district court erred in determining he lacked standing to challenge the IRGC's March 5, 2015 decision. In order to have standing to bring this action for judicial review under the Iowa Administrative Procedure Act, Iowa Code chapter 17A, Filipelli "must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Godfrey*, 752 N.W.2d at 418 (quoting *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005)). These two elements "are separate requirements for standing, both of which must be satisfied." *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004).

In cases such as this, "when the 'asserted injury arises from [an] allegedly unlawful regulation (or lack of regulation) of someone else,' as opposed to cases in which the 'plaintiff is himself an object of the action (or foregone action) at issue,'" we must consider two additional elements. *Godfrey*, 752 N.W.2d at 421 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)). "[T]he plaintiff must establish 'a causal connection between the injury and the conduct complained of' and that the injury is '"likely," as opposed to merely "speculative," to be "redressed by a favorable decision."'" *Id.* (quoting *Lujan*, 504 U.S. at 561–62). "Whether litigants have standing does not depend on the legal merit of their claims, but rather whether, if the wrong alleged produces a legally cognizable

injury, they are among those who have sustained it." *Citizens*, 686 N.W.2d at 475.

The dispute at the heart of this case is over an arbitration award between the IWRA and the IGA, decided over two decades ago and fifteen years before Filipelli began breeding and racing in Iowa. Filipelli received a portion of the funds that had been held in the escrow account since 1996 because he participated in live greyhound racing at Bluffs Run between the years of 2011–2015. Filipelli was never a party in the underlying proceedings and thus clearly did not "exhaust[] all adequate administrative remedies." Iowa Code § 17A.19(1) (providing only "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review"); *see also Pub. Emp't Relations Bd. v. Stohr*, 279 N.W.2d 286, 292 (Iowa 1979) (directing the district court "to strike the names of those individual petitioners who did not participate in the proceedings before the agency"). He, therefore, does not have standing to seek judicial review of the IRGC's March 5 decision disposing of the escrow account. *See* Iowa Code § 17A.19(1). We need not consider the other elements in the test for standing. *See Citizens*, 686 N.W.2d at 475.

Filipelli also claims he has proper standing to seek judicial review of the IRGC's action because he is a third-party beneficiary of the 1995 arbitration award establishing the escrow account. Filipelli did not raise this claim before the district court, and the court did not rule on it. Consequently, this claim is not

preserved for our review.[2]  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Accordingly, we conclude the district court correctly determined Filipelli lacks standing to challenge the IRGC's March 5, 2015 action.

**AFFIRMED.**

---

[2] In his brief, Filipelli maintains error was preserved for our review because he timely filed a notice of appeal.  Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) (footnote omitted) (explaining, "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court").  The purpose behind our error-preservation rules is to ensure the district court had an opportunity to avoid or correct errors and to provide the appellate court with an adequate record to review any purported errors.  *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003).  Filipelli's timely notice of appeal, without more, is not sufficient to preserve this alleged error for our review.